Wesley M. Griffith, SBN 286390
**ALMEIDA LAW GROUP LLC**
3550 Watt Avenue, Suite 140
Sacramento, CA 95821
Telephone: 530-490-3178
wes@almeidalawgroup.com

David S. Almeida
(*pro hac vice* admission)
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, IL 60614
Telephone: 708-529-5418
david@almeidalawgroup.com

*Counsel for Plaintiff & the Proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JULIE JONES, *individually and on behalf of others similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>SKULLCANDY, INC.,<br><br>Defendant. | Case No. 3:25-cv-01759<br>Judge: Hon. Janis L. Sammartino<br><br>**OPPOSITION TO MOTION TO DISMISS AND MOTION TO TRANSFER VENUE**<br><br>Hearing Date: September 11, 2025<br>Time: 1:30 p.m.<br>Dept: 4D<br><br>Action Filed: June 4, 2025<br>Trial Date: None Set |

# TABLE OF CONTENTS


INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 1

ARGUMENT ........ 2

I. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT ........ 2

A. Defendant Purposefully Directed its Activities at California. ........ 2

B. Plaintiff's Claims Stem from Defendant's Forum Activities. ........ 6

C. Exercising Specific Jurisdiction Over Defendant is Reasonable. ........ 7

II. PLAINTIFF ALLEGES INJURY FOR ARTICLE III STANDING. ........ 9

A. Plaintiff Can Establish Concrete Harm. ........ 9

B. Remand is Appropriate in the Absence of Article III Standing. ........ 11

III. PLAINTIFF STATES CLAIMS UNDER RULE 12(b)(6). ........ 12

A. Plaintiff Plausibly Alleges CIPA Violations. ........ 12

1. *Plaintiff Did Not Provide Prior Consent.* ........ 12

2. *CIPA § 631: Plaintiff's Information Was Intercepted and Read in Transit.* ........ 16

3. *CIPA § 632: Communications Intercepted Were Confidential.* ........ 17

4. *Plaintiff Has a Reasonable Expectation of Privacy.* ........ 18

5. *Plaintiff has Sufficiently Pled her CIPA claims.* ........ 19

B. Plaintiff Plausibly Alleges a Claim for Unjust Enrichment. ........ 19

IV. *FORUM NON CONVENIENS* DISMISSAL IS NOT AVAILABLE ........ 20

V. VENUE IS PROPER ........ 20

A. Dismissal for Improper Venue is not Warranted. ........ 20

B. Transfer Is Not Warranted ........ 21

CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**Cases** **Page**

*Agostini v. Skullcandy, Inc.*,
No. 1:24-cv-04353 (S.D.N.Y.) ........ 8

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC,*
666 F.Supp.2d 1109 (C.D. Cal. 2009) ........ 23

*Applied Elastometrics v. Z-Man Fishing Prods., Inc.*,
2006 WL 2868971 (N.D. Cal. Oct. 6, 2006) ........ 24

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ........ 20

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 19

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ........ 13-15

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025) ........ 17

*Briskin v. Shopify, Inc.*,
135 F. 4th 739 (9th Cir. 2025) ........ 5-7

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 16, 18

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........ 9

*Byars v. Goodyear Tire & Rubber Co.*,
2023 WL 1788553 (C.D. Cal. Feb. 3, 2023) ........ 19

*Calder v. Jones*,
465 U.S. 783 (1984) ........ 3

*CE Distrib., LLC v. New Sensor Corp.*,
380 F.3d 1107 (9th Cir. 2004) .......... 8

*Charnis v. Skullcandy, Inc.*,
No. 2:19-cv-00764 (C.D. Cal.) .......... 8

*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*,
472 F. Supp. 2d 1183 (S.D. Cal. 2007) .......... 23

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) .......... 16-17

*Dairy v. Harry Shelton Livestock, LLC*,
2019 WL 631493 (N.D. Cal. Feb. 14, 2019) .......... 8

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) .......... 12

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) .......... 22

*Doe v. Epic Games, Inc.*,
435 F. Supp. 3d 1024 (N.D. Cal. 2020) .......... 23

*Doe v. FullStory, Inc.*,
2024 WL 188101 (N.D. Cal. Jan. 17, 2024) .......... 4

*Doe 1 v. AOL LLC*,
552 F.3d 1077 (9th Cir. 2009) .......... 20

*Eastland Music Grp., LLC v. Skullcandy*,
No. 3:18-cv-00222 (M.D. Fla.) .......... 7-8

*Enger v. Allstate Ins. Co.*,
2016 WL 10829363 (N.D. Cal. Apr. 5, 2016) .......... 22

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .......... 6

*Gates Learjet Corp. v. Jensen*,
743 F.2d 1325 (9th Cir. 1984) .......... 25

*Greenley v. Kochava, Inc.*,
2023 WL 4833466 (S.D. Cal. July 27, 2023) .......... 9-10, 22, 25

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal., Dec. 1, 2022) .......... 19

*Hawkins v. Gerber Products Co.*,
924 F. Supp. 2d 1208 (S.D. Cal. 2013) .......... 25

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) .......... *passim*

*Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus. of S. California*,
648 F.2d 1252 (9th Cir. 1981) .......... 25

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 10,15

*In re: Google Inc. Cookie Placement Consumer Priv. Litig.*,
934 F.3d 316 (3d Cir. 2019) .......... 10-11

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 18

*James v. Allstate Ins. Co*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) .......... 17

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .......... 11, 14-15

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) .......... 21-22

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) .......... 11

*Kerobo v. Southwestern Clean Fuels, Corp.*,
285 F.3d 531 (6th Cir. 2002) .......... 21

*K.H. by & through Humphrey v. Antioch Unified Sch. Dist.*,
2019 WL 2744721 (N.D. Cal. July 1, 2019) ........ 22

*Lou v. Belzberg*,
834 F.2d 730 (9th Cir. 1987) ........ 22

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ........ 3

*May v. Haas*,
2013 WL 4010293 (E.D. Cal. Aug. 5, 2013) ........ 24

*McClung v. AddShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024) ........ 11

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996) ........ 19

*Moretti v. Hertz Corporation*,
2014 WL 1410432 (N.D. Cal. April 11, 2014) ........ 14

*NBA Props., Inc. v. HANWJH*,
46 F.4th 614 (7th Cir. 2022) ........ 4-5

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........ 13

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) ........ 10

*Polizzi v. Cowles Mags., Inc.*,
345 U.S. 663 (1953) ........ 21

*Rapha Prods. Grp., LLC v. Skullcandy, Inc.*,
No. 1:10-cv-03388 (N.D. Ga.) ........ 7

*Ravelo Monegro v. Rosa*,
211 F.3d 509 (9th Cir. 2000) ........ 20

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ........ 16

*Reflex Media, Inc. v. Chan*, 2020 WL 6694316 (C.D. Cal. Oct. 30, 2020) .......... 5

*Rodriguez v. Autotrader.com*, 2025 WL 1085787 (C.D. Cal., April 4, 2025) .......... 18

*Roth v. Garcia Marquez*, 942 F.2d 617 (9th Cir. 1991) .......... 8

*Ruth Martin v. Outdoor Network LLC*, 2024 WL 661173 (C.D. Cal. Jan. 31, 2024) .......... 4

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) .......... 9

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) .......... 2-3

*Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835 (9th Cir. 2017) .......... 25

*Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990) .......... 9

*Sinatra v. National Enquirer*, 854 F.2d 1191 (9th Cir. 1988) .......... 8

*Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018) .......... 15

*Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169 (N.D. Cal. April 4, 2025) .......... 15

*Smith v. YETI Coolers, LLC*, 754 F.Supp.3d 933 (N.D. Cal. 2024) .......... 17-18

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .......... 9

*STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551 (N.D. Cal. 1988) .......... 22

*Sullivan v Oracle Corp.*,
51 Cal. 4th 1191 (Cal. 2011) ........................................................ 19

*The Wilderness Soc. v. Babbitt*,
104 F. Supp. 2d 10 (D.D.C. 2000) ........................................................ 23

*Torres v. Prudential Financial, Inc.*,
2025 WL 1135088 (N.D. Cal. April 17, 2025) ........................................................ 17

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................................ 9

*United States ex rel. Tutanes-Luster v. Broker Sols., Inc.*,
2019 WL 1024962 (N.D. Cal. Mar. 4, 2019) ........................................................ 23

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........................................................ 16

*Will Co. v. Lee*,
47 F.4th 917 (9th Cir. 2022) ........................................................ 3

*Wixen Music UK Ltd. v. Transparence Ent. Grp. Inc.*,
2021 WL 6065690 (C.D. Cal. Dec. 22, 2021) ........................................................ 25

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
433 F.3d 1199 (9th Cir. 2006) ........................................................ 5

*Zarif v. Hwareh.com, Inc.*,
2024 WL 1268167 (S.D. Cal. Mar. 2, 2024) ........................................................ 3

**<u>Statutes and Rules</u>** **<u>Page</u>**

28 U.S.C. § 1391 ........................................................ 20

28 U.S.C. § 1404 ........................................................ 20

28 U.S.C. § 1441 ........................................................ 20-21

California Penal Code § 631 ........................................................ 12, 16, 19

California Penal Code § 632 .......... 12, 17

Federal Rule of Civil Procedure 15 .......... 25

Federal Rule of Civil Procedure 45 .......... 23

## INTRODUCTION

Skullcandy, Inc. ("Skullcandy" or "Defendant") seeks to avoid accountability for secretly intercepting and recording the private communications of California website visitors in direct violation of the California Invasion of Privacy Act, Cal. Penal Code §§ 631, 632 ("CIPA"). Plaintiff's Complaint alleges that Defendant deployed third-party tracking tools including, but not limited to, the Meta Pixel, Google Analytics, and Google DoubleClick ("Tracking Technologies") on its Website to capture personally identifiable information ("PII") and transmit it to entities, without authorization or consent, including Meta Platforms, Inc. ("Meta") and Alphabet, Inc. ("Google").

Defendant's motion ignores CIPA's plain statutory language and its modern judicial interpretation. CIPA was enacted to protect the right to privacy guaranteed by the California Constitution and its protections apply to internet-based communications. In today's digital age, real-time tracking of keystrokes, mouse movements, and page views is precisely the intrusion CIPA forbids. Multiple courts have upheld materially identical claims. Defendant's motion should also be denied because it seeks premature resolution of fact issues about consent, the nature of data collected, and roles of third-party vendors. Further, Plaintiff has established personal jurisdiction over Skullcandy in California, demonstrated standing through suffering concrete and particularized harm, and shown that venue is proper in this Court.

## FACTUAL BACKGROUND

Skullcandy owns and operates an e-commerce website, www.skullcandy.com (the "Website"), through which it markets and sells headphones and audio equipment to consumers in California and nationwide. ¶¶ 1-2, 11.[1] Skullcandy encourages customers to use its Website to browse products, create accounts, make purchases, and subscribe to marketing communications. ¶¶ 2-3.

Without users' knowledge, Skullcandy installed invisible Tracking

[1] All paragraph citations are to Plaintiff's Class Action Complaint. ECF No. 1-2.

Technologies that operate as sophisticated surveillance tools that capture users' every interaction with the Website and transmit this voluminous data (including sensitive PII and financial information) to third parties in real time. ¶¶ 4-6. The Meta Pixel, for example, is embedded code that, according to Meta, "tracks the people and the types of actions they take" on the Website, secretly recording and transmitting sensitive user data, including PII, to Meta without users' knowledge or consent. ¶¶ 33-34. Embedded in Skullcandy's Website, the Tracking Technologies automatically "fire" with each page load, creating a parallel stream of communications that diverts users' PII, purchase details, and other unique identifiers (e.g., Facebook IDs, Google client IDs), enabling identification of specific individuals. ¶¶ 35-38, 66-101 &121-24.

In February 2025, Plaintiff purchased earbuds from the Website. ¶ 119. Plaintiff viewed several webpages, including the product page for the earbuds she purchased, while reasonably believing her communications with Skullcandy were private. ¶ 120. On each webpage, Tracking Technologies intercepted information related to pages she visited, products she viewed, and her confidential and private PII disclosed for her purchase. ¶¶ 121-22. This data was instantaneously transmitted to Meta and Google with unique identifiers that tie this data to Plaintiff without her knowledge or consent. ¶¶ 123-25.

## ARGUMENT

### I. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT.

The Court has specific personal jurisdiction over Skullcandy. The Ninth Circuit applies a three-part test, asking (1) whether Defendant purposefully directed its activities toward the forum, (2) whether the claim arises out of Defendant's forum-related activities, and (3) whether it is reasonable to exercise jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

#### A. Defendant Purposefully Directed its Activities at California.

To determine whether a defendant "purposefully directed" its activities toward

the forum, the Ninth Circuit applies the "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984). *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023). The *Calder* effects test asks "whether the defendant: '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Will Co. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022) (quoting *Schwarzenegger*, 374 F.3d at 803). The test "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citation omitted).

First, Skullcandy's online sale of products from its Website to individuals in California is an intentional act. *See, e.g.*, *Herbal Brands*, 72 F.4th at 1091 ("Defendant's sale of products to [the forum state] is an intentional act."); *Zarif v. Hwareh.com, Inc.*, 2024 WL 1268167, at *3 (S.D. Cal. Mar. 2, 2024) (holding that "operation of a website is an intentional act"). Defendant operates its Website to market and sells its products, and it sold Plaintiff a pair of earbuds while she resided in San Diego, California. ¶¶ 1-3, 115, 119. Defendant also acknowledges on its Website it conducts business in California.[2] Plaintiff has satisfied the first prong.

Second, Skullcandy expressly aimed its conduct at California. The Ninth Circuit recognizes "a distinction between 'passive' websites that merely make information available to visitors and 'interactive' websites, where 'users can exchange information with the host computer when the site is interactive.'" *Herbal Brands*, 72 F.4th at 1091 (quotation omitted). In *Herbal Brands*, the Ninth Circuit determined that "if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the

---

[2] *See* Almeida Decl., ¶ 6, *California Proposition 65*, SKULLCANDY, https://support.skullcandy.com/hc/en-us/articles/27419462922135-California-Proposition-65 (last visited Aug. 6, 2025) ("most U.S. companies conduct business in California (just like us at Skullcandy!)") ("Skullcandy California Business Disclosure").

forum, the defendant 'expressly aimed' its conduct at that forum." *Id.* at 1093.

That is precisely what occurred here. As part of its regular course of business, Skullcandy operates an interactive Website where it sells its products. ¶¶ 1-3; *see also Herbal Brands*, 72 F.4th at 1092 ("[I]t is undisputed that Defendant's Amazon storefronts are interactive websites: visitors can exchange information with the host computer by inputting data directly."). During the checkout process, visitors to the Website are required to interact with the host computer by entering their PII. *See* Jones Decl., ¶ 5.[3] Defendant exercised control over the distribution of this product by "creat[ing] and maintain[ing] a distribution network that reached the relevant forum by choosing to operate on a universally accessible website that accepts orders from residents of all fifty states and delivers products to all fifty states." *Herbal Brands*, 72 F.4th at 1094-95.

Specifically, Plaintiff purchased a pair of earbuds from Defendant via its Website while residing in San Diego, California. ¶¶ 115, 119. During the check-out process, Plaintiff interacted with Defendant's Website by entering her email address, name, address, telephone number, and payment information. Jones Decl., ¶¶ 5-7. Plaintiff received the Skullcandy earbuds that she ordered from Defendant's Website shortly thereafter. *Id.*, ¶ 10. For these reasons, Plaintiff has satisfied the second prong.[4] *See, e.g.*, *see also NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 625 (7th Cir.

---

[3] "The Court may consider evidence presented in affidavits and declarations in determining personal jurisdiction." *Apple, Inc. v. Allan & Assocs., Ltd.*, 445 F. Supp. 3d 52, 50 (N.D. Cal. 2020) (citation omitted). In addition, [c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (citation omitted).

[4] The cases that Defendant cites are distinguishable. Defendant cites four cases—*Zarif*, 2024 WL 1268167; *Kauffman v. Home Depot, Inc.*, 2024 WL 221434 (S.D. Cal. Jan. 19, 2024); *Doe v. FullStory, Inc.*, 2024 WL 188101 (N.D. Cal. Jan. 17, 2024); and *Ruth Martin v. Outdoor Network LLC*, 2024 WL 661173 (C.D. Cal. Jan. 31, 2024)—to argue that "California courts have routinely declined to extend personal jurisdiction to privacy claims *when the allegations merely concern the browsing and use of a website*." MTD at 14.

2022) (reasoning that, when a defendant "structured its sales activity in such a manner as to invite orders from a forum and developed the capacity to fill them, it cannot now point to its customers in that forum and tell us, 'It was all their idea.'") (cleaned up).

Despite Defendant's contention to the contrary, "the express aiming inquiry does not require a showing that the defendant targeted its advertising or operations at the forum." *Herbal Brands*, 72 F.4th at 1094. Further, any challenge to Plaintiff's purchase of one pair of earbuds is wholly without merit because "the express-aiming inquiry does not depend on the number of sales made to customers in the forum." *Id.* at 1095. "Drawing a line based on the number of sales would require an arbitrary distinction that is not preferred in this area of the law." *Id.*

Third, Defendant caused harm in California. While Defendant does not expressly address this prong, it states "[t]here is no implication that Skullcandy had a California-specific focus or sought to engage with a California audience." MTD at 15. Yet, this prong does not turn on whether the defendant *focused* on the forum, but rather on whether harm to an individual in the forum was foreseeable. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006); *Reflex Media, Inc. v. Chan*, 2020 WL 6694316, at *5 (C.D. Cal. Oct. 30, 2020) (same). There is foreseeable harm when a jurisdictionally sufficient amount of harm is suffered in the forum state. *Yahoo! Inc.*, 433 F.3d at 1207.

Here, Plaintiff alleges she purchased earbuds from Defendant and suffered harm while in California. ¶¶ 9, 115, 119, 127. Defendant concedes its Website "reaches California residents," MTD at 15, and touts that it does business in California. *See* Almeida Decl., ¶ 6. These admissions demonstrate Defendant knew it had customers in California and, as such, it was foreseeable that a California resident may allege harm by Defendant. *See also Briskin v. Shopify, Inc.* ("*Shopify*"), 135 F. 4th 739, 759 (9th Cir. 2025) (examining the *Calder* effects test and finding

the district court had personal jurisdiction over the defendant where, *inter alia*, the defendant "knows about its California consumer base [and] conducts its regular business in California"). This satisfies the third prong.

**B. Plaintiff's Claims Stem from Defendant's Forum Activities.**

The second requirement for specific jurisdiction is that Plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum state. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352, 362 (2021) ("[O]ur most common formulation of the rule demands that the suit arise out of *or relate to* the defendant's contacts with the forum," and "[t]he first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing") (cleaned up).

In *Shopify*, the Ninth Circuit applied the Supreme Court's reasoning in *Ford* to claims alleged against an e-commerce platform that facilities online sales. *See* 135 F. 4th at 760. The Ninth Circuit explained that, like Ford, Shopify conducts business nationwide via its website and held that the plaintiff's claims "relate to" Shopify's California contacts because the plaintiff alleged "the kind of injury that would 'tend to be caused' by Shopify's contacts with California merchants and consumers." *Id.* at 760 (quotation omitted). Further, it found that "Shopify's installation of software onto unsuspecting Californians' devices and extracting personal data from them is the kind of contact that would tend to cause privacy injuries" and, as such, the plaintiff's claims "satisfy the second requirement for specific jurisdiction." *Id.*

The same is true here. *First,* Skullcandy offers the products on its Website nationwide and, as relevant here, in California. MTD at 15; Almeida Decl., ¶ 6. *Second*, Plaintiff alleges she was harmed in California. ¶¶ 9, 115, 119, 127. *Third*, Defendant's conduct, *i.e.*, installing Tracking Technologies on its Website that intercepted and transmitted Plaintiff's communications containing her PII to third parties, ¶¶ 63-128, is "the kind of contact that would tend to cause privacy injuries,"

*Shopify*, 135 F. 4th at 760, including the harm alleged by Plaintiff, ¶ 127. For these reasons, specific personal jurisdiction exists.

### C. Exercising Specific Jurisdiction Over Defendant is Reasonable.

Plaintiff plausibly alleges that Defendant purposefully directed its business activities toward California residents and that her claims are related to that conduct. "The burden thus shifts to [Defendant] to 'present a compelling case' that the exercise of jurisdiction is not reasonable." *Shopify*, 135 F.4th at 761 (quotation omitted). The Ninth Circuit has developed a seven-factor test to determine reasonableness, which considers: "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Id.*

First, Skullcandy argues it "did not purposefully direct its conduct at California." MTD at 16. This argument is belied by Defendant's representations in its Motion and on its Website. *See id*. at 15 (Skullcandy's Website "reaches California residents"); Almeida Decl., ¶ 6. In *Shopify*, the Ninth Circuit held that this factor weighed in favor of plaintiff because it "already concluded that the extent of [defendant's] purposeful direction of its regular business activities supports specific personal jurisdiction." 135 F.4th at 761. The same is true here.

Second, Skullcandy argues "there would be an undue burden" to defend suit in California because its "executive offices are located outside of California." MTD at 16. But it is not unusual for corporations to litigate outside their home state, especially when they are engaged in commerce nationwide. Skullcandy has litigated cases in Georgia, Florida, New York, and California. *See, e.g.*, *Rapha Prods. Grp., LLC v. Skullcandy, Inc.*, No. 1:10-cv-03388 (N.D. Ga.); *Eastland Music Grp., LLC*

*v. Skullcandy*, No. 3:18-cv-00222 (M.D. Fla.); *Agostini v. Skullcandy, Inc.*, No. 1:24-cv-04353 (S.D.N.Y.); *Charnis v. Skullcandy, Inc.*, No. 2:19-cv-00764 (C.D. Cal.). Indeed, "modern advances in communications and transportation [that] have significantly reduced the burden of litigating in another [state or] country." *Sinatra v. National Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988).

Third, the Parties agree the third factor is neutral. *See* MTD at 16.

Fourth, Defendant attempts to diminish California's interest in adjudicating the dispute because "any decisions that would have led to Plaintiff's alleged injury would have occurred in Utah, not California." MTD at 16. But "California maintains a strong interest in providing an effective means of redress for its residents who have been tortiously, or otherwise, injured." *Dairy v. Harry Shelton Livestock, LLC*, 2019 WL 631493, at *8 (N.D. Cal. Feb. 14, 2019) (citation omitted). As such, this factor weighs in favor of Plaintiff.

Fifth, Plaintiff and her attendant evidence are located in the forum state, while Defendant and evidence related to it are in Utah. As such, this factor is neutral.

Sixth, the importance of the forum to Plaintiff's interest in convenient and effective relief weighs in favor of Plaintiff. "Litigating in one's home forum is obviously convenient." *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004); *see also Roth v. Garcia Marquez*, 942 F.2d 617, 624 (9th Cir. 1991) ("no doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference"). Plaintiff's interest in litigating this case in this forum is hardly minimal. Not only did she suffer harm in this forum, ¶ 127, but this is the only forum in which Plaintiff can conveniently and effectively seek relief without the burden of expensive accommodations to litigate this case in another state.

Seventh, Defendant argues "an alternative forum exists: Utah." MTD at 16. But "it is not enough that [Defendant] demonstrate that some other forum is more reasonable than [the forum], [Defendant] must show a due process violation;

[Defendant] must show that jurisdiction in [the forum] would make the litigation 'so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to its opponent.'" *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). Defendant failed to carry that burden. Accordingly, this factor favors Plaintiff. Plaintiff respectfully requests that the Court determine that exercising specific personal jurisdiction over Defendant is reasonable.

## II. PLAINTIFF ALLEGES INJURY FOR ARTICLE III STANDING.

Plaintiff's allegations establish a concrete, particularized injury arising from the unauthorized collection and disclosure of her PII. Plaintiff may establish Article III standing by showing (i) she suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) the injury was likely caused by defendant; and (iii) the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). A Rule 12(b)(1) challenge to jurisdiction may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial challenge, "the presumption of truthfulness attaches to the allegations in the complaint, and the court is limited to the four corners of the pleading in determining whether it has jurisdiction over the matter." *Greenley v. Kochava, Inc.*, 2023 WL 4833466, at *3 (S.D. Cal. July 27, 2023) (citation omitted).

### A. Plaintiff can establish concrete harm.

"To establish injury in fact, Plaintiff must show that she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, *Inc. v. Robins*, 578 U.S. 330, 339, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) (quotation omitted). A "concrete" injury "must be 'de facto'; that is, it must actually exist." *Id.* at 340 (citing Black's Law Dictionary 479 (9th ed. 2009)). "[V]arious intangible harms can also be concrete.'" *Greenley*, 2023 WL 4833466, at *3 (quoting *TransUnion*, 594 U.S. at

414). These include injuries "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* "A right to privacy encompasses the individual's control of information concerning his or her person.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (cleaned up); *see also Greenley*, 2023 WL 4833466, at *3 (citing *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019) (recognizing the "common law roots of the right to privacy")). Thus, intrusions into privacy can constitute an injury in fact.

In *Facebook Internet Tracking*, the Ninth Circuit reasoned that Facebook's practices enable it to "amass a great degree of personalized information ... without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives." 956 F.3d at 599. The Court rejected the argument that the collection of private data is not an injury in fact: "In an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion ... that federal courts are powerless to provide a remedy when an internet company surreptitiously collected private data ... is untenable." *Id.* (quotation omitted). As such, it found standing for plaintiffs' CIPA and other claims. *Id.* at 598–99.

Here, Plaintiff alleges Defendant collected her PII in violation of CIPA and was unjustly enriched by its conduct. ¶ 8. By Defendant's use of Tracking Technologies on its Website, Plaintiff's communications and PII were disclosed to Facebook and Google without consent. ¶¶ 4-8. Plaintiff identifies the categories of PII that were disclosed, including specific URLs of pages Plaintiff visited and her unique identifiers, which allowed Facebook and Google to identify her. *Compare* MTD at 17-18, *with* ¶¶ 116, 120-24. These are sufficient allegations of concrete harm. *See, e.g.*, *Greenley*, 2023 WL 4833466, at *3 (finding standing where plaintiff alleged a data broker collected and sold his data); *In re: Google Inc. Cookie Placement*

*Consumer Priv. Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) (finding standing where plaintiff's data was collected through the use of tracking cookies).

Defendant's feigned concern about the extent or severity of the privacy violation is not appropriate. *See McClung v. AddShopper, Inc.*, 2024 WL 189006, at *1 (N.D. Cal. Jan. 17, 2024) ("The question whether an invasion of privacy is severe enough to confer liability is distinct from whether the injury is concrete and particularized enough to confer standing in federal court."). Likewise, the fact that Plaintiff provided the information necessary to create and maintain her personal Facebook and Google accounts does not mean that she consented to her personal information being used for marketing purposes in conjunction with her personal browsing activities. *Compare* MTD at 18 (citing ¶¶ 116-17), *with* ¶¶ 125-28 (emphasizing that Plaintiff never consented to Defendant disclosing her PII).

Further, Defendant's Privacy Policy—available only after clicking out of the "Cookie Policy" banner at the bottom of it homepage—was not sufficient to secure consent. Rather, Plaintiff alleges Defendant never sought consent, and Plaintiff never provided consent for the interception of her PII. ¶¶ 104-06, 145-49, 159, 172. These allegations must be accepted as true and are sufficient to meet Plaintiff's pleading requirements. *See, e.g.*, *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (plaintiff met his pleading burden by alleging he did not provide express consent.); *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *6 (S.D. Cal. Jan. 12, 2024) (same). Because the Privacy Policy is merely available through a link at the bottom of the Website (hidden behind the Cookie Policy) and required no manifestation of assent by Plaintiff, the Privacy Policy is an unenforceable "browsewrap" agreement as discussed in Subsection III.A.1, *infra*. Plaintiff alleges privacy violations sufficient to constitute concrete harm; Plaintiff has standing.

**B. Remand is appropriate in the absence of Article III standing.**

While Plaintiff's allegations are sufficient, should the Court find otherwise,

this action should be remanded. *See, e.g.*, *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 n.6 (9th Cir. 2018).

## III. PLAINTIFF STATES CLAIMS UNDER RULE 12(b)(6).

### A. Plaintiff Plausibly Alleges CIPA Violations.

Plaintiff's claims under CIPA §§ 631-632 are properly pled. CIPA § 631(a) imposes liability on a party that willfully and without consent reads or attempts to learn the contents of any communication while in transit, or aids, agrees with, employs, or conspires with any person to do so. A defendant violates CIPA § 632(c) where it intentionally and without consent uses an electronic device to eavesdrop upon or record a confidential communication. Each element of either section is met.

First, Plaintiff did not consent to Defendant's recording because the inconspicuous hyperlinks buried at the bottom of the Website in small font fail to constitute valid consent under CIPA and vague references to data sharing lack the specificity required for knowing consent to real-time interception. Second, CIPA § 631(a) is satisfied because the Website captured and transmitted Plaintiff's communications in real time, and CIPA § 632 is satisfied because Defendant deliberately installed Tracking Technologies on its Website and thereby permitted the interception of Plaintiff's confidential communications. Finally, Plaintiff is a normal consumer and did not waive her privacy rights through her purchase.

Defendant's arguments to the contrary regarding the nature of the interception, purported consent, or lack of legitimate privacy expectations are insufficient to contradict Plaintiff's allegations. Plaintiff's CIPA claims should proceed.

#### ***1. Plaintiff Did Not Provide Prior Consent.***

Defendant argues Plaintiff consented to its use of Tracking Technologies by agreeing to its Privacy Policy, Terms of Use, and Cookie Policy (the "Terms"), which it argues disclose the "exact conduct of which Plaintiff complains" by disclosing "third-party analytics and other service providers[] may use a variety of technologies

that automatically or passively collect information." MTD at 19. This argument fails.

*i. The Terms Were Not Sufficiently Conspicuous to Confer Notice.*

"While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (cleaned up). Among those bedrock principles is the requirement of "[m]utual manifestation of assent, whether by written or spoken word or by conduct." *Id.* (quotation marks and citation omitted).

Plaintiff did not manifest her assent to Defendant's Terms, which are (barely) available on the Website via a hyperlink. ¶ 106. Like other "browsewrap" agreements, Defendant's Terms do not require the user to manifest assent expressly. *See Nguyen*, 763 F.3d at 1176. Instead, the user may, with proper notice, give his or her "assent simply by using the website." *Id*. But visiting the website alone is not sufficient to manifest assent. *Id.* Instead, the user of the website must have "actual or constructive knowledge of a website's terms and conditions." *Id.* (citations omitted).

Defendant does not contend Plaintiff had actual notice of the Terms. *See* MTD at 19-20. Instead, Defendant argues Plaintiff had constructive knowledge of the Terms because those Terms are available via hyperlink on Defendant's Website. MTD at 20 (citing ¶¶ 107-109).

In *Berman v. Freedom Financial Network, LLC*, the Ninth Circuit held that hyperlinks on a website provide "reasonably conspicuous notice" when two conditions are met. *See* 30 F.4th 849, 856-57 (9th Cir. 2022). "First, to be conspicuous in this context, a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.* at 856. "Second, while it is permissible to disclose terms and conditions through a hyperlink, the fact that a hyperlink is present must be readily apparent." *Id.* at 857. A "web designer must do more than simply underscore the hyperlinked text in order to ensure that it is sufficiently 'set apart' from the surrounding text." *Id.*

In *Berman*, the hyperlink at issue appeared in "a tiny gray font considerably smaller than the font used in the surrounding website elements." *Id.* at 856. The Court also found the hyperlink was not conspicuous because "comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else" and because the "other visual elements draw the user's attention away" from the hyperlink. *Id.* at 857. Accordingly, the Court held the hyperlink was the "antithesis of conspicuous" and failed to provide reasonably conspicuous notice. *Id.*

The same is true here. Defendant's Website places the Terms of Service and Privacy Policy at the bottom of the webpage often behind the Cookie banner in font "considerably smaller than the font used in the surrounding website elements." ¶¶ 108, 110. The links appear below large, colorful product images and promotional text that dominate the screen. ¶ 111. The hyperlinks are not underlined and do not appear in blue or any distinct color that would distinguish them from regular text. ¶ 113. The "high-resolution product photographs, along with the larger text used elsewhere" occupy the primary visual space. ¶ 112. As such, Plaintiff was never presented with conspicuous notice of the Terms and did not provide the mutual assent necessary.

The cases cited by Defendant support Plaintiff's position. *See* MTD at 21. *Javier v. Assurance IQ, Inc.* involved "'clickwrap,' not 'browsewrap,' which courts routinely uphold as valid." 2021 WL 940319, at *3 (N.D. Cal. Mar. 9, 2021). And there, the hyperlinks were bold, color-contrasted, and immediately beside language that tied the act of clicking to assent. *Id*. Similarly, *Moretti v. Hertz Corporation*, involved a clickwrap agreement, where users manifested assent to "conspicuously presented" links by checking a box and clicking a button. 2014 WL 1410432, at *2-3 (N.D. Cal. April 11, 2014). Conversely, Defendant's hyperlinks appear at the bottom of the page in small, undifferentiated text that users might never scroll past and require no affirmative manifestation of assent. ¶¶ 108-109.

Because its links are obscured, the Website provides only "mere passive

browse-wrap" that fails to give "reasonably conspicuous notice" or "unambiguous manifestation of assent" required for contract formation. *See Berman*, 30 F.4th at 856. As such, Defendant's Terms are not binding on nor enforceable against Plaintiff.

*ii. Plaintiff Did Not Consent Because the Terms Were Not Specific.*

Even if Plaintiff had notice of the Terms—which she did not—consent under CIPA requires prior, specific notice that communication will be recorded or monitored and then proceeds after that warning. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 610-11 (holding Defendant's disclosure stating that it "receives information when you visit sites that use our services" was "too vague and generic" to constitute knowing consent). Consent only attaches where "a reasonable person [would understand] that an action would be carried out so that their acquiescence demonstrates knowing authorization." *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018). Even with binding website terms, consent is "generally limited to the specific conduct authorized." *Javier*, 2021 WL 940319, at *2.

Defendant's Terms do not authorize the tracking at issue. The Terms refer only to interceptions by unnamed third-party analytics providers and fail to specify what data is being captured or to what end. ¶¶ 103-106. Although Defendant relies on *Smith v. Facebook*, where defendant disclosed "precise [tracking] conduct" at issue, including which party collected tracked data and where and when it occurred. *See* 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017). Skullcandy's vague references to unnamed tracking technologies that collect unspecified information, as found in its Terms, falls short. *Compare id.*, *with* ¶¶ 103-106; *see also Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169 at * 2 (N.D. Cal. April 4, 2025) (finding disclosure of "gather[ing] information regarding use of our Site, which Google uses to generate reports for us regarding our Site" insufficient to confer inquiry notice of tracking).

Because Defendant neither alerted visitors to its Terms nor clearly disclosed what data was collected or how it would be shared—let alone received Plaintiff's

assent—it cannot establish Plaintiff consented to recording as a matter of law.

***2. CIPA § 631: Plaintiff's Information Was Intercepted and Read in Transit.***

Section 631(a) of CIPA imposes liability where a person "willfully and without consent of all parties. . . attempts to read, or to learn the contents or meaning of any message" while it is in transit, *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025) (quotation omitted), and where a person aids such conduct, Cal. Pen. Code § 631(a).[5] An interception is "in transit" when the eavesdropper reads the data before it is stored. *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (holding website analytics tools that capture user interactions in real time as they occur, rather than accessing stored data after the fact, intercept communications "in transit" under CIPA).

Federal courts applying CIPA to online activity have held that a defendant deploying third-party trackers intercepts communications "in transit" when embedded code allows a third party to capture messages as they are sent on the website. *See, e.g.*, *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1187 (S.D. Cal. 2024) (holding plaintiffs plausibly alleged a violation of § 631(a) where their messages were sent by embedded code from defendant's website to third parties); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1073-74 (N.D. Cal. 2021) (finding CIPA alleged where browsing information was "simultaneously disseminated to an unannounced second observer") (quotation omitted).

Here, Plaintiff alleges the Tracking Technologies embedded in Skullcandy's Website fire while the page is in use, causing Plaintiff's browsing activity and text input on the Website to be transmitted to Defendant and third parties simultaneously. *See, e.g.*, ¶¶ 70-75 (demonstrating Plaintiff's PII and browsing information transmitted to Facebook in real time); ¶ 97 ("When the Website loads, DoubleClick's scripts collect and transmit real-time information about the pages the user views, the

---

[5] Plaintiff does not allege that the first or third predicate act described in Cal. Penal Code § 631(a) applies. *See* MTD at 22.

items they interact with, and any potential purchase or checkout steps”).

To succeed on its argument, Defendant must show that the information was electronically stored in a server or database *before* being illicitly accessed. *See* MTD at 22-23 (citing *Boulton v. Community.com, Inc.*, 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025) (finding no interception where data was first saved to a server and only later processed); *James v. Allstate Ins. Co*, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023) (similar)).[6] Unlike those cases, Plaintiff's communications were captured in real time and transmitted directly to third-party AdTech companies. *Compare id.*, *with* ¶¶ 74-81, 90-97. Because Defendant's Tracking Technologies intercepted and read Plaintiff's communications before they were stored, the interceptions occurred in transit and constitute an unlawful interception under CIPA.

Finally, Defendant's argument that a party cannot eavesdrop on itself is irrelevant to Plaintiff's allegations that Defendant *aided and enabled* third parties to capture her communications. Compare MTD at 23, with ¶¶ 37, 43; *see also D'Angelo*, 726 F. Supp. 3d at 1187; *Smith v. YETI Coolers, LLC*, 754 F.Supp.3d 933 (N.D. Cal. 2024) (“courts have imputed the civil liability standard for aiding and abetting to determine the scope of derivative liability”); *Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5 (derivative liability plausibly alleged where defendant knew third party tracker's “data collection had the purpose of tracking individually identifiable user habits.”).

#### ***3. CIPA § 632: Communications Intercepted Were Confidential.***

Defendant claims that CIPA § 632 does not apply because Plaintiff's intercepted information lacked a reasonable expectation of confidentiality. *See* MTD at 24. However, website visitors who enter confidential information like PII and payment information have an objectively reasonable expectation that this information

---

[6] This distinction sets apart the present case from *Torres v. Prudential Financial, Inc*, where the court held that communications read only after being stored in a third-party's servers were no longer in transit. *Compare* 2025 WL 1135088, at *6 (N.D. Cal. April 17, 2025), *with e.g.*, ¶¶ 43,76-83 (alleging contemporaneous interception).

will not be transmitted to unknown third parties when the data reveals something unique about the plaintiff. *See, e.g.*, *In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022). Plaintiff revealed unique shopping habits which, in the hands of third parties, will be used to create a unique advertising profile and a basis for a slew of personally targeted ads. ¶¶ 29-30, 86-87. Plaintiff's existing relationships with Google and Facebook does not include consent to the collection or disclosure of her shopping habits and payment information on Skullcandy's Website, and the Complaint plausibly alleges that she treats this information as private. *Compare* MTD at 24, *with* ¶¶ 76, 83, 120. Internet users have a privacy interest in the specific URLs that comprise their browsing history. *See Brown*, 685 F. Supp. 3d at 938. Plaintiff's communications fall squarely within protected confidential information.[7]

#### ***4. Plaintiff Has a Reasonable Expectation of Privacy.***

Defendant contends that Plaintiff waived any reasonable expectation of privacy by visiting the Website with the intent to elicit privacy violations**.** *See* MTD at 24-25. Defendant misapplies *Rodriguez v. Autotrader.com*, which addressed Article III standing in a case where plaintiff was "a tester [who] actively seeks out privacy violations." 2025 WL 1085787, at *1 (C.D. Cal., April 4, 2025). Unlike in *Rodriguez*, the only evidence cited by Defendant to show that Plaintiff is a "tester" is that she has brought other privacy-related cases. MTD at 24. Exercising one's legal rights does not forfeit privacy protections. *See, e.g.*, ¶¶ 119-20. Website users have a reasonable expectation that their communications on a website will be transmitted only to the intended recipient. *See Brown*, 685 F. Supp. 3d at 938 (the Ninth Circuit recognizes a

---

[7] Defendant mischaracterizes its other cases on this point. Both *YETI Coolers, LLC* and *Yoon v. Meta Platforms, Inc.* found plaintiffs alleged confidential communications under § 632, with *Yoon* finding that users have a reasonable expectation of privacy in browsing data that reveals specific content viewed, just as Plaintiff here alleges interception of specific product pages viewed and items purchased. *Compare* MTD at 23-24 (citations omitted), *with* ¶¶ 74-76, 119-24.

privacy interest in website data). Defendant's references to other lawsuits involving Plaintiff are immaterial and improperly seek to chill lawful claims. Given her reasonable expectation of privacy, Plaintiff's CIPA claim withstands this Motion.

***5. Plaintiff has Sufficiently Pled her CIPA claims.***

Plaintiff's claims exceed Rule 8's pleading requirements by describing the time, scope, location, perpetrator, and nature of Defendant's interceptions. *Compare* MTD at 15 (citing *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996) (dismissing a bare recital of legal conclusions unsupported by specific factual allegations)), *with* ¶¶ 136-60. Plaintiff's level of specificity exceeds the "short and plain statement" required under Rule 8(a)(2) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Defendant's reliance on the presumption against extraterritoriality is misplaced. The presumption applies only "where the statute is silent as to jurisdictional scope." *Sullivan v Oracle Corp.*, 51 Cal. 4th 1191, 1207 (Cal. 2011). But CIPA explicitly covers communications "sent from, or received at any place within this state." Cal. Pen. Code § 631(a). Whereas the court in *Hammerling v. Google LLC* granted dismissal where the plaintiff "fail[ed] to allege that the data in question was intercepted in California," Plaintiff in this case specifically alleges that the data was intercepted from her personal machine, which was in California. *Compare* 2022 WL 17365255, at *11 (N.D. Cal., Dec. 1, 2022), *with* ¶¶ 115-19, 150 (alleging that Plaintiff was physically in California when she accessed the Website). Courts have allowed CIPA claims against out-of-state defendants to proceed on similar allegations. *See Byars v. Goodyear Tire & Rubber Co.*, 2023 WL 1788553, at *5 (C.D. Cal. Feb. 3, 2023). Because CIPA is designed to protect California residents (like Plaintiff) Plaintiff's claims are not barred by extraterritoriality.

**B. Plaintiff Plausibly Alleges a Claim for Unjust Enrichment.**

Under California law, "[w]hen a plaintiff alleges unjust enrichment, a court

may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (cleaned up). Because Plaintiff plausibly alleges Defendant benefitted from its fraudulently concealed violations of CIPA, ¶¶ 161-77, this claim is adequately alleged.

## IV. *FORUM NON CONVENIENS* DISMISSAL IS NOT AVAILABLE.

Since Congress enacted the venue transfer statute in 1948, *forum non conveniens* has not been available to shift a case to another U.S. forum. As the Ninth Circuit explained: "Rather than requiring dismissal and refiling of a suit where the alternative forum is another federal court, § 1404(a) now allows transfer of a case from one federal district court to another 'for the convenience of parties and witnesses in the interest of justice.'" *Ravelo Monegro v. Rosa*, 211 F.3d 509, 512 (9th Cir. 2000) (quoting 28 U.S.C. § 1404(a)). "Section 1404(a) thus serves as a statutory substitute for *forum non conveniens* in federal court when the alternative forum is within the territory of the United States. The doctrine of *forum non conveniens* survives in federal court only when the alternative forum is in a foreign country." *Id.* at 513. The only appropriate inquiry regarding Defendant's venue arguments are governed by 28 U.S.C. §§ 1391 and 1404, addressed in Subsections V.1 and 2, *infra*.

## V. VENUE IS PROPER.

### A. Dismissal for Improper Venue is not Warranted.

Defendant properly removed this case to this Court under 28 U.S.C. § 1441(a), and—independent of removal—a substantial part of the events giving rise to the claims occurred here. For these reasons, Defendant's venue challenge fails.

Venue is generally proper either where defendant resides or where a substantial part of the events giving rise to the claims occurred. *See* 28 U.S.C. § 1391(b)(1)–(2). In considering a motion to dismiss under Rule 12(b)(3), facts outside the pleadings may be considered. *See, e.g.*, *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).

For cases removed from state court, 28 U.S.C. § 1441(a) "expressly provides

that the proper venue of a removed action is the district court of the United States for the district and division embracing the place where such action is pending." *Polizzi v. Cowles Magazine, Inc.*, 345 U.S. 663, 665–66 (finding no venue objection under section 1391 exists because the action was removed to the proper district court and not originally brought in federal court); *see also Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 534 (6th Cir.2002) ("[V]enue in removed cases is governed solely by section 1441(a)"). Because this case was removed from state court, § 1441(a) governs venue. As "the district court of the United States for the district and division embracing" San Diego County (where the case was initially filed), the Southern District of California is the proper venue. *Polizzi*, 345 U.S. at 665–66.

Even apart from § 1441(a), the fact that Defendant's principal place of business is in Utah is not enough to suggest that venue is improper. Plaintiff accessed Defendant's Website from California. ¶¶ 115-22. Through this access in California, Plaintiff submitted information to complete her purchase and Defendant disclosed Plaintiff's PII to Facebook and Google, ¶¶ 115-128—companies headquartered in California.[8] These facts go beyond "conclusory allegation[s]" (MTD at 30) and support a finding of proper venue. Further, Defendant paints a misleading picture of Skullcandy having no relation to California. MTD at 30. But Defendant was previously headquartered in California and maintains a satellite office in California. *See* Almeida Decl., ¶ 7, Ex. A. Because § 1441(a) applies, dismissal for improper venue is not warranted, and venue in this Court is also proper under § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in California.

**B. Transfer Is Not Warranted.**

A decision to transfer venue requires "an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (cleaned up). "[D]efendant must make a strong showing

---

[8] Facebook is headquartered in Menlo Park, California. *See id.*, ¶ 8, Ex. B. Google is headquartered in Mountain View, California. *See id.*, ¶ 9, Ex. C.

of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Under § 1404(a), courts consider the following factors: (1) plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of witnesses; (4) ease of access to evidence; (5) familiarity of each forum with applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) relative court congestion and time of trial in each forum. *Id.* at 843; *GNC Franchising, Inc.*, 211 F.3d at 498–99. None of these factors support transfer.

First, the Court must give substantial deference to Plaintiff's choice of forum, unless Defendant can show other factors clearly outweigh it. *Decker Coal Co.*, 805 F.2d at 843. Plaintiff chose her home forum, a choice entitled to deference. *-ley*, 684 F. Supp. 3d at 1042-43 ("A court may afford 'great weight' to the plaintiff's choice of forum, especially 'when the plaintiff has chosen to file the lawsuit in its home forum.'") (quoting *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)).[9] This factor weighs in Plaintiff's favor.

Second, transfer does not serve the parties' convenience. The Ninth Circuit rejects transfer when it would "merely shift rather than eliminate the inconvenience." *Decker*, 805 F.2d at 843; *see also STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988). Plaintiff alleges Defendant conducts considerable business in California through its Website (¶¶ 11, 13) and maintains a satellite office in California.[10] Given that Defendant's online business targets

---

[9] The fact that Plaintiff previously filed in Utah is not sufficient to support an inference of "forum shopping." *See, e.g.*, *Enger v. Allstate Ins. Co.*, 2016 WL 10829363, at *2 (N.D. Cal. Apr. 5, 2016).

[10] Defendant unreasonably seeks to require Plaintiff to detail every practice Defendant conducts in California. MTD at 33. Without discovery, Plaintiff has no way of knowing the full extent of Defendant's actions taken in California. *See, e.g.*, *K.H. by & through Humphrey v. Antioch Unified Sch. Dist.*, 2019 WL 2744721, at *3 (N.D. Cal. July 1, 2019) ("Plaintiff cannot be expected to plead facts that he cannot possibly access and can only be learned through discovery.").

California residents, maintaining the case here poses no undue hardship, and Defendant has not shown a substantial inconvenience. *See The Wilderness Soc. v. Babbitt*, 104 F. Supp. 2d 10, 15 (D.D.C. 2000). Because this forum serves the convenience of the parties, this factor weighs against transfer.

Third, transfer does not serve the convenience of non-party witnesses. "The convenience of the witnesses, particularly non-party witnesses, is often the most important factor" in ruling on a motion to transfer venue under section 1404(a). *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020) (cleaned up). Courts consider "not only the number of witnesses, but also the nature and quality of their testimony." *United States ex rel. Tutanes-Luster v. Broker Sols., Inc.*, 2019 WL 1024962, at *5 (N.D. Cal. Mar. 4, 2019) (citation omitted). "In establishing inconvenience to witnesses, the moving party must name the witnesses, state their location, and explain their testimony and its relevance." *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007).

Defendant fails to identify any non-party witnesses. Rather, Defendant loosely mentions potential (unnamed) party witnesses employed by Defendant—who do not weigh heavy in the analysis because "courts generally give less consideration to the convenience of party witnesses or witnesses employed by a party because these witnesses can be compelled by the parties to testify regardless of where the litigation will occur." *Epic Games*, 435 F. Supp. 3d at 1042 (emphasis added) (citing *Allstar Mktg. Grp., LLC v. Your Store Online, LLC,* 666 F.Supp.2d 1109, 1132 (C.D. Cal. 2009)). By failing to identify any non-party witnesses, let alone explain how they would suffer undue hardship in a California forum, Defendant has not met its burden.

Plaintiff, however, expects to call numerous non-party witnesses employed in California, including key employees from Facebook and Google—companies that received Plaintiff's and the putative Class's PII. Both are headquartered in California, making this forum far more convenient for their relevant California employees than

Utah. *See* Almeida Decl., ¶¶ 8-9. These witnesses may be unwilling to appear voluntarily, but this Court can compel their attendance. *See* Fed. R. Civ. P. 45(c)(1)(B)(ii) (subpoena power extends to anyone who resides, is employed, or transacts business in California). Utah courts lack that power. The ability to secure testimony from these critical non-party witnesses weighs strongly against transfer.

Fourth, courts require that "any difficulties in accessing the evidence must be more significant than those that can be overcome by the availability of electronic data transfer." *May v. Haas*, 2013 WL 4010293, at *7 (E.D. Cal. Aug. 5, 2013). This case concerns Defendant's use of computer code on its Website, and it identifies no Utah-based evidence unobtainable electronically, leaving this factor neutral.

Fifth, California courts are intimately familiar with CIPA and well-suited to adjudicate claims under California law. This factor weighs against transfer.

Sixth, there are no related cases to the instant litigation in another district with which this case could or should be consolidated. Accordingly, this factor is neutral.

Seventh, California has a strong interest in this litigation: Plaintiff and Class Members are California residents injured by Defendant's conduct. ¶¶ 1, 9, 11, 13, 115-28; *see also Applied Elastometrics v. Z-Man Fishing Prods., Inc.*, 2006 WL 2868971, at *3 (N.D. Cal. Oct. 6, 2006) ("Plaintiff is a California corporation located in this district. California has an interest in litigation concerning its residents."). Plaintiff alleges that Skullcandy targets California residents via its Website. *Compare* MTD at 28, *with* ¶¶ 1, 11, 13. The wiretapping of Plaintiff occurred in California, as Plaintiff accessed Defendant's Website from California. ¶¶ 145, 150. The Proposed Class is also comprised exclusively of "California residents." ¶ 129.

While Skullcandy's principal place of business is in Utah, it maintains a California presence through a satellite office in Costa Mesa[11] and its Website. ¶¶ 11,

---

[11] *See* Almeida Decl., ¶ 7, Ex. A, Emily Santiago-Molina, *Skullcandy Makes an OC Comeback*, Orange County Business Journal (Sept. 11, 2023), https://www.ocbj.com/retail/skullcandy-makes-an-oc-comeback/.

13, 150. Plaintiff's prior filing in Utah is immaterial. *See Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 846 (9th Cir. 2017) ("It typically does not constitute forum shopping where a party acted within his rights in filing a suit in the forum of his choice, even where the chronology of events suggest that both parties took a somewhat opportunistic approach to the litigation.") (cleaned up). Notably, Plaintiff's choice of forum is afforded "great weight," especially because Plaintiff has chosen to file the lawsuit in her home forum. *Greenley*, 684 F. Supp. 3d at 1042.

The eighth factor considers "whether a trial may be speedier in another court because of its less crowded docket," not whether dismissal would reduce this Court's congestion. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984). Defendant offers no proof that a Utah trial would be faster, making this factor neutral.

Defendant's transfer arguments fail. It cites *Hawkins v. Gerber Products Co*. to suggest Utah has a local interest. MTD at 35 (citing 924 F. Supp. 2d 1208, 1216 (S.D. Cal. 2013)). In *Hawkins*, the court transferred to New Jersey—where defendants were headquartered—largely because multiple related actions were pending there. *Id*. at 1213–17. Here, this would be the only such action against Skullcandy in Utah. California is the proper forum to adjudicate California law claims, especially for disputes arising from business directed at California residents. *See Wixen Music UK Ltd. v. Transparence Ent. Grp. Inc*., 2021 WL 6065690, at *5 (C.D. Cal. Dec. 22, 2021); *see also* ¶¶ 9–15. No factor supports transfer, Defendant has not met its burden, and Plaintiff's chosen forum should stand.

## CONCLUSION

Plaintiff requests that the Court deny Defendant's Motion, grant leave to amend to address any deficiencies, and award any other appropriate relief.[12]

[12] Leave to amend should be freely granted. *See, e.g.*, *Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus. of S. California*, 648 F.2d 1252, 1254 (9th Cir. 1981) (citing Fed.R.Civ.P. 15(a)). While Plaintiff believes her Complaint adequately alleges facts supporting her claims and damages, if the Court is inclined to dismiss any claim, she respectfully requests leave to file a First Amended Complaint.

Respectfully submitted,

Dated: August 15, 2025

By: /s/ David S. Almeida

David S. Almeida (*pro hac vice*)
**ALMEIDA LAW GROUP LLC**
849 W. Webster Ave
Chicago, IL 60614
Telephone: 708-529-5418
david@almeidalawgroup.com

Wesley M. Griffith, SBN 286390
**ALMEIDA LAW GROUP LLC**
3550 Watt Ave,, Suite 140
Sacramento, CA 95821
Telephone: 530-490-3178
wes@almeidalawgroup.com

*Counsel for Plaintiff & the Proposed Class*