UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE JONES, individually and on behalf of similarly situated individuals,<br><br>                          Plaintiffs,<br><br>v.<br><br>SKULLCANDY, INC.,<br><br>                          Defendant. | Case No.:  25-CV-1759 JLS (BLM)<br><br>**ORDER DENYING DEFENDANT SKULLCANDY, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>(ECF No. 2) |

Presently before the Court is Defendant Skullcandy, Inc.'s ("Skullcandy" or "Defendant") Motion to Dismiss Plaintiff's Complaint ("Mot.," ECF No. 2).  Also before the Court is Plaintiff Julie Jones's Opposition to Motion to Dismiss ("Opp'n," ECF No. 10), and Skullcandy's Reply in Support of Motion to Dismiss Plaintiff's Complaint ("Reply," ECF No. 11).  After reviewing Plaintiff's Complaint ("Compl.," ECF No. 1-2, Ex. A), the Parties' arguments, and the relevant law, the Court **DENIES** Skullcandy's Motion (ECF No. 2).

## BACKGROUND

Defendant owns and operates an e-commerce website, Skullcandy.com (the "Website"), selling headphones and audio equipment. Compl. ¶¶ 1–2. Plaintiff, a purchaser of Skullcandy earbuds and a Website user, *id.* ¶ 119, alleges that Defendant "chose to install certain invisible code including the Meta Pixel, Google DoubleClick[,] and Google

Analytics (the 'Tracking Technologies'), which capture users' [personally identifiable information] and communications with the Website and transmit[s] this data to Meta Platforms, Inc. ('Meta' or 'Facebook') and Alphabet, Inc. ('Google')," *id.* ¶ 4. Plaintiff alleges that Defendant's Tracking Technologies "allow third parties like Google and Facebook to secretly monitor browsing activity of unsuspecting customers who use Defendant's Website to review and purchase Skullcandy products." *Id.* ¶ 5. Plaintiff concludes that by failing to obtain consent for these actions, Defendant has violated the wiretapping and eavesdropping prohibitions in the California Invasion of Privacy Act ("CIPA")–§§ 631 and 632–and has been unjustly enriched. *Id.* ¶ 8; Cal. Penal Code §§ 631, 632.

## I.    California Invasion of Privacy Act

"CIPA was enacted to protect Californians' privacy rights." *Fregosa v. Mashable, Inc.*, No. 25-CV-1094-CRB, 2025 WL 2886399, at *2 (N.D. Cal. Oct. 9, 2025) (citing Cal. Penal Code § 630). "CIPA . . . broadly prohibits different forms of wiretapping and communication interception." *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 24-CV-6525-WLH-E, 2025 WL 1141168, at *8 (C.D. Cal. Feb. 27, 2025). "Section 631 is analogous to the Wiretap Act . . . and prohibits surreptitious eavesdropping." *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 896 (S.D. Cal. 2025) (citing Cal. Penal Code § 631(a)). CIPA § 631(a) creates four avenues for relief:

> (1) where a person "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument";
>
> (2) where a person "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit";
>
> (3) where a person "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained"; and

> (4) where a person "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above."

*Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1091 (N.D. Cal. 2025) (quoting *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023)). In sum, § 631(a) details "three distinct and mutually independent patterns of conduct: intentional wiretapping, willfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities."[1] *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978). The fourth clause of § 631(a) penalizes anyone who aids or abets "any of the aforementioned prohibited acts." *Saedi*, 2025 WL 1141168, at *8.

While historically § 631(a) applied to phone lines, courts have extended its reach to include "new technologies," including internet communications. *See Matera v. Google Inc.*, No. 15-CV-4062-LHK, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (considering the plain language of § 631, the legislative intent underlying CIPA to protect privacy, and the California Supreme Court's approach to applying statutes to new technologies and concluding that § 631 applies to new technologies like email); *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.").

CIPA § 632(a) prohibits, "without the consent of all parties to a confidential communication," the use of "an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." Cal. Penal Code § 632(a); *see also Javier*, 2022 WL 1744107, at *2 ("Section 632 'prohibits . . . a party . . . from recording [or eavesdropping upon] a conversation without first informing all parties to the conversation

---

[1] Plaintiff states in her Opposition that she "does not allege that the first or third predicate act described in Cal. Penal Code. § 631(a) applies." Opp'n at 26 n.5. Therefore, Plaintiff only alleges that Defendant aided and abetted a third party "willfully attempting to learn the contents or meaning of a communication in transit over a wire." *Tavernetti*, 22 Cal. 3d at 192.

that the conversation is being recorded.'" (quoting *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117 (2006)).

Further, § 637.2 states that,

> (a) Any person who has been injured by a violation of [§§ 631 or 632] may bring an action against the person who committed the violation for the greater of the following amounts:
>> (1) Five thousand dollars ($5,000) per violation.
>> (2) Three times the amount of actual damages, if any, sustained by the plaintiff.

Plaintiff seeks statutory damages pursuant to § 637.2 for violations of §§ 631(a) and 632(a). Compl. ¶¶ 151, 160.

## II. Tracking Technologies

Plaintiff alleges that Defendant uses multiple different forms of Tracking Technology including the Meta Pixel, Facebook's Conversions Application Programming Interface ("CAPI"), and Google Analytics. Compl. ¶¶ 33, 39, 50. Plaintiff alleges that these Tracking Technologies "pair event data and intercepted communications with users' social media identities," by transmitting to third parties complete URLs which "disclos[e] the exact pages that a customer visited and the order in which she visited them" as well as what a customer purchases or adds to their cart. *Id.* ¶¶ 66–68. The user's personally identifiable information and browsing and purchase history are then used "to target users with specific advertisements based on personal information that was intercepted without the user's knowledge or consent." *Id.* ¶ 85.

### A. Meta

Meta "surveils user activity both on and off its site" to bolster its advertising revenue by using tools such as the Meta Pixel. *Id.* ¶¶ 28, 33. "The Meta Pixel 'tracks the [webpage users] and the types of actions they take.'" *Id.* ¶ 33 (internal citation omitted). "When a user accesses a website hosting the Meta Pixel," the software instructs the user's browser

4

to send a message to Meta's servers containing the original GET request[2] "along with additional data that the Pixel is configured to collect" without "alerting the individual that this is happening." *Id.* ¶¶ 35, 38.  "The user's communications to the Website are transmitted to Meta together with cookies and other unique identifiers that Meta can use to match the communications to individuals who have a Facebook account, including the c_user ID cookie which contains the user's unique Facebook ID." *Id.* ¶ 44.  Meta's advertisers then use this data "to apply highly specific filters and parameters for their targeted advertisements" to "reach people who have already shown interest in their business, whether they're loyal customers or people who have visited their app or visited their website." *Id.* ¶ 28 (cleaned up).  These advertisers "can target existing customers directly, and can also build 'Lookalike Audiences,' which leverage information such as demographics, interest, and behavior from your source audience to find new people who share similar qualities, capturing this data by manually uploading contact information for customers, or by utilizing Meta's 'Business Tools.'" *Id.* ¶ 29.  Meta's Business Tools tracks "when a user visits a webpage," that webpage's URL and metadata, and "what content a visitor views, adds to cart or purchases." *Id.* ¶¶ 30–32.

Defendant has also allegedly implemented Meta Pixel's "Advanced Matching" feature "which allows website owners to send hashed customer data including [personally identifiable information] (such as email addresses, phone numbers, and names) directly to Meta through the Pixel's code when users take specific actions on the website, such as filling out a form with their personal information." *Id.* ¶ 45.  Plaintiff alleges that this addition to the Meta Pixel allows Meta to "collect and transmit additional personally identifiable information" beyond the standard Pixel collection, resulting in "significantly

---

[2] A GET request is a type of HTTP Request.  Compl. ¶ 34 n.14.  "An HTTP Request is an electronic communication a website visitor sends from his device's browser to the website's server." *Id.*  "The GET request serves two purposes: it first tells the website what information is being requested and then instructs the website to send the information back to the user.  The GET request also transmits a referrer header containing the personally-identifiable URL information." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1144 n.2 (9th Cir. 2024) (citing *In re Facebook*, 956 F.3d at 607).

increasing the invasiveness of its tracking." *Id.* ¶ 47.

Plaintiff also alleges that Defendant has installed Facebook's CAPI on its website servers. *Id.* ¶ 39. CAPI "is located on the website owner's servers and is not a bug planted onto the website User's browser," allowing website owners to "circumvent any ad blocks or other denials of consent by the User that would prevent Pixel from sending website users' data and communications to Facebook directly." *Id.* ¶ 40. CAPI "links collected data points" to a dataset ID that are processed like the events processed by the Meta Pixel. *Id.* ¶ 41.

### B. Google

Plaintiff further alleges that Defendant has installed Google Analytics—"a leading web analytics service that website owners use to understand user behavior, measure traffic, and optimize site performance." *Id.* ¶ 50. Google Analytics, once a website owner embeds it into their webpage, "gathers insights about user interactions, such as page views, session duration, and conversations, which can be leveraged for advertising and other marketing activities." *Id.* ¶ 51.

Defendant has also integrated "Google's DoubleClick technology into its Website"— which as first party trackers are able to bypass many consumer privacy controls such as cookies blockers. *Id.* ¶¶ 55, 93. "Websites that install DoubleClick can correlate website activity with Google's vast repository of user data, including search history, YouTube viewing patterns, and activities on other websites that use Google's advertising technologies." *Id.* ¶ 58. When a user visits Defendant's website, DoubleClick "automatically assigns that user to specific advertising segments based on the products they view, creating a detailed profile of their audio equipment preferences and their spending habits," which Plaintiff argues, "effectively authoriz[es] Google to maintain persistent surveillance of Website visitors' activities and connect those activities to Google's vast repository of user data." *Id.* ¶ 60. Like the Meta Pixel, "the user's communications to the

website are transmitted to Google together with cookies[3] and other unique identifiers that Google can use to match the communications to individuals who use Google's services." *Id.* ¶ 62. This "extensive tracking of user-identifiable data occurs in real time and is automated through each user's browser interactions with the Website." *Id.* ¶ 100.

## III.  Plaintiff Julie Jones

Plaintiff is a resident of San Diego, California, who has had an account with Facebook since 2007 and an account with Google since 2021—using the same name and email address as her Skullcandy account. *Id.* ¶¶ 115–17. On February 7, 2025, Plaintiff accessed the website and purchased headphones. *Id.* ¶ 119. Plaintiff alleges that she did not consent to the disclosure of her personally identifiable information, that Defendant did not attempt to obtain Plaintiff's consent, that Defendant did not provide Plaintiff with an opportunity to opt out of Defendant's "data sharing scheme," and that Defendant "never clearly and conspicuously notified her" it was sharing her data with third parties. *Id.* ¶¶ 125–28. Plaintiff alleges that Defendant has "received, retained, and benefitted from Plaintiff's and Class Members' personal data" such as "[d]etailed browsing histories and product preferences," "[s]hopping cart contents and purchase behavior," "[p]ersonally identifiable information including names, email addresses, and Facebook/Google account identifiers," "[r]eal-time behavioral data showing consumer interests and purchasing patterns," and "[d]emographic and psychographic profiles that enable targeted marketing." *Id.* ¶ 165. Plaintiff alleges that Defendant has monetized this data by enhancing its advertising, consumer targeting, and conversion rates. *Id.* ¶ 166.

/ / /

/ / /

/ / /

---

[3] "Cookies are small text files sent by a website's server to a user's web browser and stored locally on the user's device which can be used to track, *e.g.*, a user's browsing and visit history, website interactions, user input data, shopping behavior, session information, and more." *Walsh v. Dollar Tree Stores, Inc.*, No. 25-CV-1601-SVK, 2025 WL 2939229, at *2 (N.D. Cal. Oct. 16, 2025) (internal quotation marks and citations omitted).

## LEGAL STANDARD

### I.    Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and thus have an obligation to dismiss claims for which they lack subject matter jurisdiction. *Demarest v. United States*, 718 F.2d 964, 965–66 (9th Cir. 1983). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When a party files a 12(b)(1) motion, "there is a presumption of a lack of jurisdiction until the plaintiff affirmatively proves otherwise." *Orient v. Linus Pauling Inst. of Sci. & Med.*, 936 F. Supp. 704, 706 (D. Ariz. 1996).

Under Federal Rule of Civil Procedure 12(b)(1), a party may raise by motion the defense that the complaint lacks subject matter jurisdiction via a facial or factual attack. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, such as the one here, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A court resolves a facial attack as it would a Rule 12(b)(6) motion: "Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient . . . to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

### II.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted

unlawfully." *Id*. Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id*. (quoting *Twombly*, 550 U.S. at 557).

Though this plausibility standard "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555). In other words, a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (alteration in original) (quoting *Twombly*, 550 U.S. at 557). Put differently, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Review under Rule 12(b)(6) requires a context-specific analysis involving the Court's "judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In performing that analysis, "a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1020 (S.D. Cal. 2019). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (second alternation in original). If a complaint does not survive Rule 12(b)(6), a court grants leave to amend unless it determines that no modified contention "consistent with the challenged pleading could . . . possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## DISCUSSION

On July 16, 2025, Defendant filed the current Motion moving for dismissal on several grounds. Specifically, Defendant argues: (1) Plaintiff does not have standing because she has failed to allege any cognizable harm; (2) Plaintiff fails to establish personal jurisdiction over Skullcandy; (3) venue is improper in the Southern District of California, and (4) Plaintiff fails to state a claim under CIPA and for unjust enrichment. Mot. at 2–4. The Court addresses each argument in turn.

/ / /

## I.    Standing

Defendant argues that Plaintiff does not have standing because she "fails to allege any harm—physical, economic, or otherwise—resulting from her use of the Website." Mot. at 22.  The Court disagrees.

"Article III of the Constitution confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To establish standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  At the pleading stage, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

"Various intangible harms can . . . be concrete." *TransUnion LLC*, 594 U.S. at 425. "Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* (citing *Spokeo, Inc.*, 578 U.S. at 340–41).  The Ninth Circuit has found that "[t]he harms protected by [CIPA] bear a 'close relationship' to ones that have 'traditionally been regarded as providing a basis for a lawsuit.'" *Campbell v Facebook*, 951 F.3d 1106, 1117 (9th Cir. 2020) (quoting *Spokeo, Inc.*, 578 U.S. at 340–41).  Thus, CIPA "codif[ies] a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (citing *Campbell*, 951 F.3d at 1117).

Here, Plaintiff has "adequately alleged an invasion of a legally protected interest that is concrete and particularized." *Id.*  Plaintiff alleges that Defendant, through use of the Tracking Technologies, has "received, retained, and benefitted from Plaintiff's and Class Members' personal data" such as "[d]etailed browsing histories and product preferences," "[s]hopping cart contents and purchase behavior," "[p]ersonally identifiable information including names, email addresses, and Facebook/Google account identifiers," "[r]eal-time

behavioral data showing consumer interests and purchasing patterns," and "[d]emographic and psychographic profiles that enable targeted marketing." Compl. ¶ 165. This is sufficient to allege that Defendant's "tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information." *In re Facebook*, 956 F.3d at 598 (finding standing where the information collected "would allegedly reveal an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives"); *Shah v. MyFitnessPal, Inc.*, 25-CV-4430-PCP, 2026 WL 216334, at *3 (N.D. Cal. Jan. 27, 2026) (finding standing where third parties "surreptitiously obtained" a wide range of information about the plaintiffs, including their "browsing history, visit history, [and] website interactions"); *Krzyzek v. Openx Techs., Inc.*, No. 25-CV-5588-SI, 2026 WL 206855, at *3 (N.D. Cal. Jan. 27, 2026) (finding standing where the defendant allegedly "compiled detailed user profiles" by collecting cookies, IP addresses, email addresses, and "information regarding the users' activity on the websites and communications with the websites"); *Casillas v. Six Flags Ent. Corp.*, No. 25-CV-6824-CBM-PD, 2025 WL 3684543, at *9 (C.D. Cal. Dec. 15, 2025) (finding standing where plaintiff's "personal content information was tracked and collected, 'including search queries,' 'products searched for,' 'user interests,' and 'browsing habits'"); *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-CV-3647-JSC, 2025 WL 3268404, at *3–4 (N.D. Cal. Nov. 24, 2025 (same).

Therefore, Plaintiff has adequately alleged standing, and Defendant's Motion is denied insofar as it argues a lack of standing.

## II. Personal Jurisdiction

Defendant next argues that Plaintiff has failed to establish personal jurisdiction over Skullcandy under Rule 12(b)(2). Mot. at 17.

### A. General Principles

Federal Rule of Civil Procedure 12(b)(2) allows for a responding party to move for an action to be dismissed due to a lack of personal jurisdiction. "A court's power to exercise

jurisdiction over a party is limited by both statutory and constitutional considerations." *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1135 (S.D. Cal. 2018). In this case, those considerations are one and the same. *See Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ("California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution.").

The Due Process Clause of the Fourteenth Amendment requires that a defendant "have certain minimum contacts with [a forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, *Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Courts have personal jurisdiction over a party where they have either general or specific jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Specific jurisdiction relies on an "'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (citations omitted).  Furthermore, specific jurisdiction is more limited than general jurisdiction as it "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (internal quotation omitted). Only specific jurisdiction is at issue here. *See* Opp'n at 12; Reply at 2.

Plaintiff has the burden of establishing that jurisdiction is proper. *CollegeSource, Inc. v. AcademyOne Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). "Where . . . the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023) (quoting *CollegeSource*, 653 F.3d at 1073).

/ / /

/ / /

/ / /

/ / /

## B. *Specific Jurisdiction*

In order to determine whether specific jurisdiction may be exercised over a non-resident defendant, courts in the Ninth Circuit turn to the following three prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; *or* perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citations omitted). The burden of satisfying the first two prongs belongs to Plaintiff, and "if the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum State." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citation omitted) (cleaned up). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (2006)).

### 1. *Purposeful Direction*

A purposeful direction analysis is generally used in suits where "claims require[] an intentional tortious or 'tort-like' act." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023) (citing *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021)). A showing "that a defendant [purposefully] *directed* [its] conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Schwarzenegger*, 374 F.3d at 803 (emphasis added). When conducting a purposeful direction analysis, courts take into consideration the *Calder* "effects" test, which requires a plaintiff to establish that the defendant: "(1) committed an

intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citing *Dole Food Co.*, 303 F.3d at 1111); *see also Calder v. Jones*, 465 U.S. 783 (1984).

### a.    Intentional Act

"The first component of the *Calder* effects test requires an intentional act by the defendant." *Zarif*, 789 F. Supp. 3d at 888 (citing *Ayla*, 11 F.4th at 980). "This requirement is met when the defendant acts 'with an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act.'" *Id.* (quoting *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1209 (9th Cir. 2020)). Operating a website and selling physical products to the forum's residents are both intentional acts. *Id.* (citing *Herbal Brands*, 72 F.4th at 1091).

As Plaintiff contends, "Defendant operates its website to market and sell[] its products, and it sold Plaintiff a pair of earbuds while she resided in San Diego, California." Opp'n at 13. Plaintiff further contends that Defendant intentionally "aided, agreed with, employed, permitted, or otherwise enabled Google and Meta" to install and use the Tracking Technologies to track user's data, including users in California. Compl. ¶¶ 13; 147. Defendant does not contest that this prong is satisfied. *See* Mot. at 19. Accordingly, the intentional act prong is satisfied. *See Zarif*, 789 F. Supp. 3d at 888 (finding this prong satisfied under similar facts).

### b.    Express Aiming

The second component of the *Calder* effects tests requires the plaintiff to allege a defendant "expressly aimed" its intentional act at the forum. *Ayla*, 11 F.4th at 980. In the Ninth Circuit opinion considering this issue, *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025), personal jurisdiction was found over a company that was alleged to "target California consumers to extract, collect, maintain, distribute, and exploit for its own profit, not only . . . California consumers' payment information . . . but also all of the other personal identifying information that it extracts from the software it permanently installs on their devices without their knowledge or consent." *Briskin*, 135 F.4th at 755–76.

14

1    The Ninth Circuit, reconsidering the issue *en banc*, found that this prong is satisfied
2    when an interactive internet platform "deliberately reache[s] out beyond its home state by
3    knowingly installing tracking software onto unsuspecting Californians' [devices] so that it
4    could later sell the data it obtained, in a manner that [is] neither 'random, isolated, [n]or
5    fortuitous,'" *id.* at 759–60 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592
6    U.S. 351, 359 (2021)), and "even if that platform cultivates a 'nationwide audience[] for
7    commercial gain,'" *id.* at 758 (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d
8    1218, 1230 (9th Cir. 2011)).  The court reasoned that "[p]re-internet, there would be no
9    doubt that the California courts would have specific personal jurisdiction over a third party
10   who physically entered a Californian's home by deceptive means to take personal
11   information from the Californian's files for its own commercial gain."  *Id.* at 756 (citation
12   omitted).

13       The court rejected the contention that the company did "not expressly aim its conduct
14   at California because it operates nationwide and thus is agnostic as to the location in which
15   it data-mines the consumers' personal identifying information."  *Id.* at 757.  Rather, "the
16   Supreme Court has considered and rejected the argument that because a nationwide
17   company is everywhere, it is jurisdictionally nowhere except in its principal place of
18   business and state of incorporation."  *Id.* (citing *Ford Motor Co.*, 592 U.S. at 355, 363).
19   The court held that "an interactive platform 'expressly aims' its wrongful conduct toward a
20   forum state when its contacts are its 'own choice and not random, isolated, or fortuitous.'"
21   *Id.* (quoting *Ford Motor Co.*, 592 U.S. at 359).  The court further "held that expressly aiming
22   does not require a nationwide interactive website to have a 'forum-specific focus' or
23   'differential targeting.'"  *Doe v. Call-On Doc, Inc.*, No. 24-CV-2095-GPC (KSC), 2025 WL
24   1677632, at *8 (S.D. Cal. June 13, 2025) (quoting *Briskin*, 135 F.4th at 757–58).

25       Defendant argues that "[t]he mere facts that Plaintiff resides in California, accessed
26   Skullcandy's website, and sustained alleged privacy injuries is not enough to show
27   Skullcandy expressly aimed claim-related conduct at California."  Mot. at 19.  Defendant
28   then states that "California courts have routinely declined to extend personal jurisdiction to

privacy claims when the allegations merely concern the browsing and use of a website." *Id.* However, the cases Defendant cites for this assertion all rely on *Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. 2023), which has since been vacated and granted rehearing *en banc*, resulting in *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025), discussed above. *See Briskin v. Shopify, Inc.*, 101 F.4th 706, 706 (9th Cir. 2024) ("Upon the vote of a majority of nonrecused active judges, it is ordered that this case be reheard en banc pursuant to Federal Rule of Appellate Procedure 35(a) and Circuit Rule 35-3. The three-judge panel opinion is vacated."); *Zarif*, 789 F. Supp. 3d at 890 ("[T]he Ninth Circuit vacated its opinion in *Briskin* and granted a rehearing en banc."). Thus, Defendant fails to adequately address the new framework established in *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025), and instead argues that Plaintiff has failed to establish Skullcandy has a "California-specific focus," which is no longer required. *See Briskin*, 135 F.4th at 757–58.

The Court finds, like the court in *Briskin*, that Skullcandy "expressly aimed its conduct at California through its extraction, maintenance, and commercial distribution of the California consumers' personal data in violation of California laws." *Id.* at 756. Even though Meta and Google "allegedly conducted the interception, processing and assembly of data for use in advertising services," Plaintiff alleges that Skullcandy intentionally aided and assisted them in intercepting Plaintiff's data "by intentionally embedding and configuring their data processing platforms onto Defendant's [W]ebsite." *Call-On Doc, Inc.*, 2025 WL 1677632, at *8; *Thomas v. Papa John's Int'l, Inc.*, No. 24-3557, 2025 WL 1704437, at *1 (9th Cir. June 18, 2025) (finding that Papa John's expressly aimed its conduct at California because plaintiff alleged that it "use[d] its website to intentionally collect information that invades the privacy of users, knowing that any alleged harm will be suffered in California"). Therefore, the Court rejects Defendant's argument that there cannot be personal jurisdiction over Skullcandy because "Plaintiff does not allege that Skullcandy collects data directly." Mot. at 18.

Further, Plaintiff alleges that Defendant "chose to install certain invisible code including [the Tracking Technologies]" to "secretly monitor browsing activity of

unsuspecting customers who use Defendant's Website."  Compl. ¶¶ 4–5.  Plaintiff alleges that Defendant has "received, retained, and benefitted from Plaintiff's and Class Members' personal data" such as "[d]etailed browsing histories and product preferences," "[s]hopping cart contents and purchase behavior," "[p]ersonally identifiable information including names, email addresses, and Facebook/Google account identifiers," "[r]eal-time behavioral data showing consumer interests and purchasing patterns," and "[d]emographic and psychographic profiles that enable targeted marketing."  *Id.* ¶ 165.  Plaintiff further alleges that Defendant has monetized this data by enhancing its advertising, consumer targeting, and conversion rates.  *Id.* ¶ 166.

Plaintiff also "alleges she purchased earbuds from Defendant," "suffered harm while in California," and that "Defendant's online business was purposefully directed at California and California residents."  Opp'n at 15; Compl. ¶ 13.  Plaintiff also argues that Defendant conceded its Website reaches California Residents, and that the Website "is accessed by users throughout California and the United States," resulting in Defendant doing "considerable business through its Website in California."  Opp'n at 15 (first citing Compl. ¶¶ 9, 115, 119, 127; and then citing Almeida Decl., ¶ 6); Compl. ¶ 11.

At the pleading stage, it is plausible that Defendant was aware that the Tracking Technologies would collect data of California residents due to its previous history of online sales in California and the fact that Defendant's Privacy Policy includes a section referring to "California Privacy Rights" and does not refer to the privacy laws of any other state.[4] *See* Opp'n at 13 n.2; Mot., Ex. C at 60; *see also Gabrielli v. Motorola Mobility LLC*, No. 24-CV-9533-JST, 2025 WL 1939957, at *8 (N.D. Cal. July 14, 2025) (finding purposeful

---

[4] The Court takes Judicial Notice of Defendant's Privacy Policy and Terms of Service (ECF No. 2, Exs. B, C).  Courts may take judicial notice of "publicly accessible websites whose accuracy and authenticity are not subject to dispute."  *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1008 (N.D. Cal. 2020), *rev'd in part on other grounds*, 84 F.4th 944 (9th Cir. 2023) (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010)).  Defendant's Privacy Policy and Terms of Service are publicly available on Defendant's Website, and their authenticity is not subject to dispute.  Therefore, Defendant's Request for Judicial Notice (ECF No. 2-3) is **GRANTED** in this regard.

25-CV-1759 JLS (BLM)

direction where defendant's website specifically identified California privacy law and claimed to comply with it—without specifically mentioning the laws of any other state). Further, Defendant cannot hide behind the fact that it is a national company or that Defendant does not have a "California-specific focus." *See Briskin*, 135 F.4th at 756 (rejecting differential targeting and the argument that a company who operates nationwide can only be subject to personal jurisdiction where its principal place of business and state of incorporation are located). Based on Plaintiff's allegations, Defendant intentionally allowed the installation of the Tracking Technologies, making the collection of Plaintiff's data in California not "random, isolated, or fortuitous." *Id.* at 758 (quoting *Ford Motor Co.*, 592 U.S. at 359).

Therefore, following other courts in this Circuit, the Court "concludes that Plaintiff has made a prima facie showing that Defendant knowingly and intentionally embedded and configured [the Tracking Technologies] on its [W]ebsite and expressly aimed its conduct at California by assisting them in the targeting of Plaintiff's device for its own personal gain." *Call-On Doc, Inc.*, 2025 WL 1677632, at *8; *Hassid v. Alex and Ani, LLC*, No. CV 25-679 FMO (JCX), 2026 WL 160535, at *5 (C.D. Cal. Jan. 20, 2026) (finding plaintiff had sufficiently alleged that defendant's website, which had installed a software that tracked device and browser, geographic, and URL information, "appeals to, and profits from, an audience in California" and is "used to collect information intentionally from users, knowing that privacy harms will be suffered in California"); *Mikulsky v. Bloomingdale's, LLC*, No. 24-3564, 2025 WL 1718225, at *1 (9th Cir. June 20, 2025) (same).

### c.  Causing Harm

The third component of the *Calder* effects test requires that "[a] defendant causes harm in a particular forum when the 'bad acts' that form the basis of the plaintiff's complaint occur in that forum." *Will Co. v. Lee*, 47 F.4th 917, 926 (9th Cir. 2022), *overruled on other grounds by*, *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025). As the Court explained in its standing analysis, taking Plaintiff's allegations as true, Defendant intentionally installed the Tracking Technologies to collect Plaintiff's data and, thus, caused a privacy

harm forming the basis of Plaintiff's Complaint. *See Gabrielli*, 2025 WL 1939957, at *7 (finding a concrete injury for standing and therefore finding the third element satisfied).

Therefore, the Court finds that Plaintiff has satisfied the first element and sufficiently alleged that Defendant purposefully directed its contacts into California.

### 2. Relatedness

"The second requirement for specific jurisdiction is that [P]laintiff's claims 'must arise out of or relate to . . . [D]efendant's contacts' with the forum State." *Briskin*, 135 F.4th at 760 (quoting *Ford Motor Co.*, 592 U.S. at 359). The Court finds that, as discussed above, Plaintiff's claim arises out of Defendant's contacts with California through its Website's use of the Tracking Technologies. *See Hassid*, 2026 WL 160535, at *5. Plaintiff would not have suffered an alleged privacy injury had Defendant not contracted with Meta and Google to install the Tracking Technologies on its Website to collect her data while she accessed the website in California. *See, e.g.*, *id.* ("Plaintiff's claim arises out of, or relates to, defendant's contacts with California through its Website. Plaintiff would not have suffered an invasion of privacy had defendant not contracted with TikTok to install TikTok Software on its Website to collect and send [P]laintiff's private information to TikTok in California."); *Briskin*, 135 F.4th at 760 ("Shopify's installation of software onto unsuspecting Californians' devices and extracting personal data from them is the kind of contact that would tend to cause privacy injuries."); *Casillas*, 2025 WL 3684543, at *4 ("However, as discussed above, the Court finds Defendant purposefully directed its actions via its Website toward California, and Plaintiff's claims are based on privacy violations when consumers visited Defendant's Website and their data was collected without their consent.").

Therefore, this prong is satisfied because Plaintiff's injury arises out of her contact with Defendant's Website, and Plaintiff alleges the kind of injury "that would 'tend to be caused'" by Defendant's "contacts with California merchants and consumers." *Briskin*, 135 F.4th at 760 (quoting *Yamashita*, 62 F.4th at 505).

/ / /

3.  *Reasonableness*

Because Plaintiff has satisfied the first two prongs, the burden shifts to Defendant to "present a compelling case" that the exercise of jurisdiction is not reasonable. *Schwarzenegger*, 374 F.3d at 802 (citing *Burger King Corp.*, 471 U.S. at 476–78). "The principles governing the exercise of jurisdiction over an out-of-state party 'derive from and reflect two sets of values—treating defendants fairly and protecting interstate federalism.'" *Briskin*, 135 F.4th at 761 (internal quotation marks omitted) (quoting *Ford Motor Co.*, 592 U.S. at 360). The Ninth Circuit has developed a seven-factor balancing test to determine the reasonableness of asserting personal jurisdiction. *Id.* The factors are:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* (quoting *Herbal Brands*, 72 F.4th at 1096).

As to the first factor, the Court has already concluded that Defendant has purposefully directed its contacts into California. *See id.* (finding the first factor weighed in favor of reasonableness because the court already concluded that "the extent of [defendant's] purposeful direction of its regular business activities supports specific personal jurisdiction").

As to the second factor, Defendant argues that there would be an undue burden litigating in California because Defendant's "executive offices are located outside of California." Mot. at 21. While making a corporation litigate away from its home could constitute a burden, Defendant did not provide specific facts showing this burden, or address how progress and transportation have made foreign tribunals less burdensome. *See Abbey v. Pennsylvania State Univ.*, No. 24-CV-1217-FWS-AGR, 2024 WL 5413159, at *10 (C.D. Cal. Nov. 13, 2024); *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988).

1   This factor weighs in favor of exercising jurisdiction.

2        The Parties agree that the third factor is neutral.  *See* Mot. at 21; Opp'n at 18.

3        As to the fourth factor, "California maintains a strong interest in providing an

4   effective means of redress for its residents tortiously injured."  *Sinatra*, 854 F.2d at 1200.

5   Further, "there is no doubt that the California Legislature, in enacting CIPA, intended 'to

6   protect the right of privacy of the people of this state from what it perceived as a serious

7   threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized

8   society.'"  *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025)

9   (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002)).  Therefore, this factor weighs

10  in favor of exercising jurisdiction.

11       As to the fifth and sixth factors, the evidence will be located both in Utah and

12  California.  Plaintiff lives in California, and Defendant is incorporated in Delaware and has

13  its principal place of business in Utah.  Compl. ¶ 10.  "The site where the injury occurred

14  and where evidence is located usually will be the most efficient forum."  *Tuazon v. R.J.*

15  *Reynolds Tobacco Co.*, 433 F.3d 1163, 1176 (9th Cir. 2006) (citation omitted).  Therefore,

16  these factors slightly weigh in favor of exercising jurisdiction.

17       As to the seventh factor, Defendant argues that Utah is an alternative forum.  Mot.

18  at 21.    However, as Plaintiff correctly states, "it is not enough that [Defendant]

19  demonstrate[s] that some other forum is more reasonable than California, [Defendant] must

20  show a due process violation; it must show that jurisdiction in California would make the

21  litigation 'so gravely difficult and inconvenient that a party unfairly is at a severe

22  disadvantage in comparison to [its] opponent.'"  *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th

23  Cir. 1990) (quoting *Burger King Corp.*, 471 U.S. at 478).  Defendant has not made that

24  showing.

25       Therefore, Defendant has not met its burden to demonstrate that the exercise of

26  jurisdiction is not reasonable.  Accordingly, Defendant's Motion is denied insofar as it

27  argues a lack of personal jurisdiction.

28  / / /

## III.    Venue

Defendant next argues that dismissal of this suit is proper on *forum non conveniens* grounds, that venue is improper under Rule 12(b)(3) and 28 U.S.C. § 1406, and that, in the alternative, venue is more convenient in Utah under 28 U.S.C. § 1404(a).  Mot. at 32–35.  Plaintiff is correct that *forum non conveniens* is inapplicable to the current situation because "the doctrine of *forum non conveniens* survives in federal court only when the alternative forum is in a foreign country."  *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000) (emphasis added).  "Section 1404(a) thus serves as a statutory substitute for *forum non conveniens* in federal court when the alternative forum is within the territory of the United States."  *Id.* at 512–13 (emphasis added).  Therefore, the Court will consider whether venue should be dismissed/transferred as improper under 28 U.S.C. 1406 or transferred to a more convenient forum under 28 U.S.C. § 1404(a).

### *A. 28 U.S.C. § 1406*

Venue is proper in a judicial district in which (1) "any defendant resides, if all defendants are residents of the State in which the district is located" or (2) "a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b).  "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  A substantial part of the events giving rise to the Complaint does not require most of the events to happen in the district or that the events in the district in question predominate, but rather is evaluated based on the entire set of events with a focus on the defendant's actions.  *Sapan v. Dynamic Network Factory, Inc.*, No. 13-cv-1966-MMA (WVG), 2013 WL 12094829, at *3 (S.D. Cal. Nov. 25, 2013) (*citing San Francisco Residence Club, Inc. v. Leader Bulso & Nolan, PLC*, No. C–13–0844 EMC, 2013 WL 2050884, at *5 (N.D. Cal. May 14, 2013)).

A party may move to dismiss an action for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).  Once challenged, the plaintiff bears the burden of demonstrating that the venue is proper.  *Piedmont Label Co. v. Sun Garden Packing Co.*,

598 F.2d 491, 496 (9th Cir. 1979).  When evaluating a motion pursuant to Rule 12(b)(3), the Court need not accept the pleadings as true and may consider facts beyond the pleadings. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).  However, the court must "draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party."  *Sapan*, 2013 WL 12094829, at *2 (*citing Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009)).  Whether the case is to be transferred to a proper venue or dismissed is a matter within the discretion of the district court.  *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).  The interest of justice typically favors transfer, so plaintiffs are not prevented from bringing their claims due to technicalities.  *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962); *see also Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1103 (C.D. Cal. 2001).

Here, the Court finds that venue is proper in the Southern District of California.  As discussed above, a substantial amount of the events underlying this action took place in the Southern District of California.  Plaintiff lives in the Southern District of California and accessed Defendant's Website to purchase earbuds to ship to her home in this District. Compl. ¶¶ 14, 119.  The alleged collection of Plaintiff's data by the Tracking Technologies took place in the Southern District of California, and Plaintiff's information was disclosed to companies with a headquarters in California.  *See* Opp'n at 31.  Therefore, the Court finds that "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of California, making venue proper.  Because the Court finds venue proper under 28 U.S.C. § 1406, the Court need not address Plaintiff's argument concerning 28 U.S.C. § 1441(a).  *See* Opp'n at 30–31.

### B. 28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought . . . ." 28 U.S.C. § 1404(a).  "Section 1404 'place[s] discretion on the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'"  *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1041 (S.D.

1   Cal. 2023) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  "District

2   courts employ a two-step framework to resolve a transfer motion."  *Id.*  First, the court must

3   consider whether the plaintiff could have originally brought the action in the proposed

4   transferee forum.  *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960).  Second, the court then

5   weighs several factors "based in convenience and fairness."  *Greenley*, 684 F. Supp. 3d at

6   1041 (citing *Stewart Org.*, 487 U.S. at 29).

7       The Parties do not dispute that this action could have been brought in Utah.  "The

8   phrase where an action 'could have been brought' is interpreted to mean that the proposed

9   transferee court would have subject matter jurisdiction, proper venue, and personal

10  jurisdiction."  *Peregrine Semiconductor Corp. v. RF Micro Devices, Inc.*, No. 12-CV-911-

11  IEG WMC, 2012 WL 2068728, at *2 (S.D. Cal. June 8, 2012) (citation omitted).  The Court

12  finds that this action could be brought in Utah because Defendant's principal place of

13  business in located in Utah, making it subject to general personal jurisdiction and venue in

14  Utah, and the Utah District Court would have subject matter jurisdiction based on the Class

15  Action Fairness Act.  *See* 28 U.S.C. § 1332(d)(2) (providing subject matter jurisdiction in

16  this matter); *Daimler*, 571 U.S. at 137 ("With respect to a corporation, the place of

17  incorporation and principal place of business are paradigm bases for general jurisdiction."

18  (internal citation omitted) (cleaned up)); 28 U.S.C. § 1391(b)(1) (defining venue as proper

19  in a judicial district in which any defendant resides if all defendants are residents of that

20  state).

21      Thus, the Court turns to the convenience and fairness factors.  District courts consider

22  the following factors when deciding a transfer motion:

23          (1) the plaintiff's choice of forum, (2) convenience of the parties,
24          (3) convenience of the witnesses, (4) ease of access to the
            evidence, (5) familiarity of each forum with the applicable law,
25          (6) feasibility of consolidation of other claims, (7) any local
            interest in the controversy, and (8) relative court congestion and
26          time to trial in each forum.

27  *Greenley*, 684 F. Supp. 3d at 1041 (citing *Jones v. GNC Franchising, Inc.*, 211 F.2d 495,

28  498–99 (9th Cir. 2000)).

1    First, "a court may afford 'great weight' to the plaintiff's choice of forum, especially

2    'when the plaintiff has chosen to file the lawsuit in its home forum.'" *Id.* (quoting *Lou v.*

3    *Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)). However, deference to the plaintiff's choice

4    is reduced when an individual represents a class. *Lou*, 834 F.2d at 739 (citation omitted).

5    Defendant argues that Plaintiff's choice of forum should be afforded little weight because

6    Plaintiff has engaged in forum shopping and represents a class. Mot. at 37 (citing *Williams*

7    *v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) ("If there is any indication that

8    plaintiff's choice of forum is the result of forum shopping, plaintiff's choice will be

9    accorded little deference.")). Defendant's only evidence of alleged forum shopping is that

10   Plaintiff initially filed her claims in the District of Utah, voluntarily dismissed those claims,

11   then re-filed this matter in the Superior Court for the State of California, County of San

12   Diego, before being removed to the Southern District of California.[5] *Id.*

13   The Court finds that this factor weighs in favor of Plaintiff. The Southern District of

14   California is Plaintiff's home forum, and while Plaintiff does represent a class, all the

15   proposed class members are residents of California, not Utah, and the injury took place in

16   the Southern District of California. *See Greenley*, 684 F. Supp. 3d at 1042 (finding this

17   factor weighed in favor of plaintiff when plaintiff and all the putative class members lived

18   in California and a substantial part of the injury occurred in the forum). The Court is not

19   convinced that Defendant has raised strong evidence of forum shopping, as simply refiling

20   in one's home forum is unpersuasive evidence of forum shopping. *See Enger v. Allstate*

21   *Ins. Co.*, No. 16-CV-136-JSW, 2016 WL 10829363, at *2 (N.D. Cal. Apr. 5, 2016) (finding

22   the refiling of a lawsuit in a plaintiff's home forum "insufficient to support a strong

23   inference of forum shopping"). Therefore, this factor weighs against transfer.

24   / / /

25

---

26   [5] The Court takes Judicial Notice of Plaintiff's previous suit against Skullcandy filed in the District of Utah, *Jones v. Skullcandy, Inc.*, 2:25-cv-00184 (D. Utah, Compl. Filed March 11, 2025). "Judicial notice of court records is routinely accepted." *Mendez v. Optio Sols., LLC*, 219 F. Supp. 3d 1012, 1014 (S.D. Cal. 2016) (quoting *Rowland v. Paris L.V.*, No. 13-CV-02630-GPC-DHB, 2014 WL 769393, at *3 (S.D. Cal. Feb. 25, 2014)). Therefore, Defendant's Request for Judicial Notice (ECF No. 2-3) is **GRANTED** in this regard.

Regarding the second factor, the convenience of the parties, the Court agrees with Plaintiff that transfer would "merely shift rather than eliminate the inconvenience." *Decker Coal Co. v. Commonwealth Edison, Co.*, 805 F.2d 834, 843 (9th Cir. 1985); *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. Dec. 13, 2005) ("As to the relative convenience to the parties, the Court may not transfer a case simply to shift the burden from one party to another."). Therefore, this factor weighs against transfer.

Regarding the third factor, convenience of the witnesses, "[t]he convenience of the witnesses, particularly non-party witnesses, is often the most important factor." *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020) (citation omitted). "In determining the convenience of the witnesses, the Court must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum." *Gherebi v. Bush*, 352 F.3d 1278, 1304 n.33 (9th Cir. 2003), *vacated on other grounds*, 542 U.S. 952 (2004). In "establishing inconvenience to witnesses, the moving party must name the witnesses, state their location, and explain their testimony and its relevance." *Imran v. Vital Pharms., Inc.*, No. 18-CV-5758-JST, 2019 WL 1509180 at *4 (N.D. Cal. Apr. 5, 2019) (citation omitted). "Further, not all witnesses are treated equal: '[I]n balancing the convenience of the witnesses, primary consideration is given to third part[ies], as opposed to employee witnesses.'" *Greenley*, 684 F. Supp. 3d at 1043 (quoting *Hawkins v. Gerber Prod. Co.*, 924 F. Supp. 2d 1208, 1215 (S.D. Cal. 2013)).

The Court finds that Defendant has not met its burden. Defendant fails to name any witnesses or what their testimony would be—stating only that "the majority of material witnesses and evidence are located in Utah," which "concern activities and business decisions that occurred or were made in Utah." *See* Mot. at 38–39. Plaintiff states that Plaintiff will call "numerous non-party witnesses employed in California" employed by Facebook and Google. Opp'n at 33–34. Therefore, this factor weighs against transfer.

Regarding the fourth factor, ease of access to the evidence, "in the age of electronically stored information, the ease of access to evidence is neutral because much of the evidence in this case will be electronic documents, which are relatively easy to obtain

in any district." *Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*, No. 18-CV-1188-WHO, 2018 WL 3956430, at *8 (N.D. Cal. Aug. 17, 2018) (citation omitted).

Regarding the fifth factor, familiarity of each forum with the applicable law, Plaintiff alleges violations of California law.  Although the District of Utah is competent to apply California law, "[a] California district court is more familiar with California law than district courts in other states." *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1081 (S.D. Cal. 2011). Therefore, this factor weighs against transfer—especially given the complexity of California privacy laws. *See Greenley*, 684 F. Supp. 3d at 1044 (noting that California's "data privacy statutory regime" is complex).

The sixth factor, feasibility of consolidation of other claims, is neutral because there are no related cases in another district with which this case could be consolidated. *See* Opp'n at 34.

Regarding the seventh factor, California's interest in the controversy, the Court has already discussed at length this case's connection with California.  "California has a demonstrated interest in the privacy of its residents." *Greenley*, 684 F. Supp. 3d at 1044. Therefore, this factor weighs against transfer.

Regarding the eighth factor, relative court congestion and time to trial in each forum, the Court finds this factor insignificant, and therefore, neutral. *See Greenley*, 684 F. Supp. 3d at 1044 (finding the relative court congestion and time of trial in each forum did not "significantly move the needle").

Therefore, in balancing the factors, the factors heavily weigh against transfer. Defendant's Motion is denied insofar as it argues the District of Utah is a more convenient forum under 28 U.S.C. § 1404(a).  Accordingly, Defendant's Motion is denied as to Defendant's arguments regarding venue.

/ / /

/ / /

/ / /

/ / /

1    **IV.    Failure to State a Claim**

2    Defendant next argues that Plaintiff has failed to state a claim under Rule 12(b)(6)

3    because: (1) Plaintiff consented to any activity alleged; (2) CIPA § 631 is inapplicable

4    because Plaintiff fails to allege that the relevant information was acquired in transit; (3)

5    CIPA § 632 is inapplicable because Defendant was a party to the conversation and the

6    conversations were not confidential; (4) Plaintiff does not have a reasonable expectation of

7    privacy as a "tester" Plaintiff; (5) CIPA does not apply to "extraterritorial conduct"; and (6)

8    there is no standalone cause of action for unjust enrichment in California. *See generally*

9    Mot.  The Court considers each argument in turn.

10    ***A.  Consent***

11    Defendant argues that "Plaintiff's consent to Skullcandy's Terms of Service and

12    Privacy Policy negates the applicability of either CIPA statute as a matter of law."  Mot.

13    at 24.  Defendant concludes that the "express disclosures" in the Terms of Service, Privacy

14    Policy, and Cookie Policy (the "Terms") located via hyperlink on the Website are sufficient

15    "to put a reasonable person, including Plaintiff, on notice" that the data collected "may be

16    shared with third parties" to "promote site functionality and for marketing." *Id.* at 25.

17    Plaintiff argues that she did not consent to Defendant's recording "because the

18    inconspicuous hyperlinks buried at the bottom of the Website in small font fail to constitute

19    valid consent under CIPA" and the "vague references to data sharing lack the specificity

20    required for knowing consent."  Opp'n at 22.

21    "For there to be knowing consent to the terms of a contract under California law,

22    there 'must be actual or constructive notice of the agreement and the parties must manifest

23    mutual assent.'" *L.B. v. LinkedIn Corp.*, No. 24-CV-6832-EJD, 2025 WL 2899514, at *8

24    (N.D. Cal. Oct. 10, 2025) (quoting *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–

25    13 (9th Cir. 2023)).  "The 'principle of knowing consent' required to establish contract

26    formation applies with particular force to contracts formed online." *Id.* (quoting *Berman v.*

27    *Freedom Fin. Network, LLC*, 30 F.4th 849, 855–56 (9th Cir. 2022)).  "Contracts formed

28    online are classified 'by the way in which the user purportedly gives their assent to be bound

by the associated terms' and generally fall on a spectrum ranging from 'clickwrap' to 'browsewrap.'" *Id.* at 9 (quoting *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2014)).  Clickwrap agreements are those "in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Berman*, 30 F.4th at 856 (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014)).  Browsewrap agreements are agreements "in which a website offers terms that are disclosed only through a hyperlink[,] and the user supposedly manifests assent to those terms simply by continuing to use the website." *Berman*, 30 F.4th at 856 (citing *Nguyen*, 763 F.3d at 1176).  "Courts are more reluctant to enforce browsewrap agreements because consumers are frequently left unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms." *Id.* (citing *Nguyen*, 763 F.3d at 1178).

"Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856 (first citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017); and then citing *Nguyen*, 763 F.3d at 1173).  To be conspicuous, "a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.* (first citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002); and then citing *Nguyen*, 763 F.3d at 1177).  Courts consider "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design." *Nguyen*, 763 F.3d at 1177.

The Court finds that the Terms at issue are browsewrap because the Privacy Policy begins by stating, "By visiting the Site or using any of the Services, you consent to Skullcandy's collection, use, disclosure, transfer and storage of information relating to you as set forth in this Privacy Policy," and the images provided in the Complaint of the Website

25-CV-1759 JLS (BLM)

show a small link at the bottom of the Website homepage stating, "By using our site you agree to our Cookie Policy." ECF No. 2-2, Ex. C at 56; Compl. ¶ 109. Further, there are no allegations that a Website-user must affirmatively agree to the Terms by clicking a button to access the website. *See generally* Mot.; Opp'n at 23 ("Like other 'browsewrap' agreements, Defendant's Terms do not require the user to manifest assent expressly.").

Defendant does not argue that Plaintiff was on actual notice of the Terms—instead arguing that "[i]t is enough that 'a plaintiff is provided with an opportunity to review the terms of service in the form of a hyperlink.'" Mot. at 26 (quoting *Moretti v. Hertz Corp.*, No. C 13-02972 JSW, 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014)). Plaintiff alleges that "Skullcandy did not obtain the requisite consent" from Plaintiff or any of the class members, and the only mention of the Terms are "a small, obscured link to a 'Cookie Policy' at the bottom of the page." Compl. ¶¶ 102, 107. Plaintiff contends that "the link to the Terms is presented in a font 'considerably smaller than the font used in the surrounding website elements' and is overshadowed by 'comparatively larger font used in all of the surrounding text,' thereby minimizing users' awareness of the Privacy Policy link" and failing to provide inquiry notice. *Id.* ¶ 110; *see also Berman*, 30 F.4th at 856. The Court agrees.

"Where the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it, courts have refused to enforce the browsewrap agreement." *Nguyen*, 763 F.3d at 1177 (citation omitted). Here, the Court finds that the link to the Terms is printed in a tiny font "considerably smaller than the font used in the surrounding website elements" which "naturally directs the user's attention everywhere else." *Berman*, 30 F.4th at 856–57. This notice "is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text"—thus, "draw[ing] the user's attention away from the most important part of the page." *Id.* (citing *Nguyen*, 763 F.3d at 1178 n.1). As seen in Plaintiff's Complaint, the notice is in small white font much smaller than the rest of the text on the Website and overshadowed by large

1   photographs of Defendant's products.  Compl. ¶ 109.

2       "Because online providers have complete control over the design of their websites,

3   the onus must be on the website owners to put users on notice of the terms to which they

4   wish to bind consumers." *Berman*, 30 F.4th at 857 (first citing *Sellers v. JustAnswer LLC*,

5   73 Cal. App. 5th 444, 465 (2021); and then citing *Nguyen*, 763 F.3d at 1179) (cleaned up).

6   The Court finds that Defendant has failed to put Website users on inquiry notice of the

7   Terms.  Therefore, Plaintiff and the class members adequately allege that they did not

8   consent to the Tracking Technologies.  *See Camplisson v. Adidas Am., Inc.*, No. 25-CV-

9   603-GPC-KSC, 2025 WL 3228949, at *9 (S.D. Cal. Nov. 18, 2025) (finding no consent

10  where the policy was in a hyperlink in the footer of the page); *Rocha v. Urban Outfitters,*

11  *Inc.*, No. 23-CV-542-AMO, 2024 WL 393486, at *4–5 (N.D. Cal. Feb. 1, 2024) (finding no

12  inquiry notice where the notice was in small font and surrounded by other more important

13  information regarding a purchase); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F.

14  Supp. 3d 751, 756–57 (N.D. Cal. 2023) (finding "merely hyperlinking to a privacy policy

15  at the bottom of a webpage" insufficient to establish consent under CIPA).  Defendant's

16  Motion is denied insofar as it argues Plaintiff's consent bars her CIPA claims.

17      **B. CIPA Section 631(a) is Inapplicable**

18      Defendant argues that CIPA § 631 cannot apply to the conduct at issue because

19  Plaintiff fails to allege that a "third-party interceptor both attempted to read and learn the

20  contents of the communication and that it happened ***while in transit***—not later."  Mot. at

21  28.[6]  Plaintiff alleges that "the Tracking Technologies embedded in Skullcandy's Website

22  fire while the page is in use, causing Plaintiff's browsing activity and text input on the

23  Website to be transmitted to Defendant and third parties simultaneously."  Opp'n at 26

24  (citing Compl. ¶¶ 70–75, 97).

25

26  _____

27  [6] Defendant makes other arguments surrounding the inapplicability of the first and third predicate acts of
    CIPA § 631.  Mot. at 27.  These arguments are moot because Plaintiff states in her Opposition that she

28  "does not allege that the first or third predicate act described in Cal. Penal Code. § 631(a) applies."  Opp'n
    at 26 n.5.

Section 631(a) imposes liability where a person "willfully and without consent of all parties . . . attempts to read, or to learn the contents or meaning of any message . . . while the same is in transit," and where a person aids this conduct. Cal. Penal Code § 631(a). "To allege a predicate act under the second clause," like Plaintiff does here, "a plaintiff must allege the eavesdropping occurred 'while the communication is in transit.'" *R.C. v. Sussex Publishers, LLC*, No. 24-CV-2609-JSC, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025) (quoting Cal. Penal Code § 631(a)). "'While' is the key word here." *Valenzuela*, 674 F. Supp. 3d at 758.

Here, Plaintiff provides detailed explanations of how the Tracking Technologies collect Plaintiff's data in real time, including information about the pages the user views, the items the user interacts with, and any potential purchase or checkout steps in real time. *See* Compl. ¶¶ 69–100. Providing just one example, Plaintiff alleges that the "extensive tracking of user-identifiable data occurs in real time and is automated through each user's browser interactions with the Website," thus "every pageview or button click is tagged with a persistent ID, ensuring that Google can systematically link each action to a specific user profile." *Id.* ¶ 100.

The Court finds that Plaintiff has provided sufficient information to allege that the tracking takes place "while the communication is in transit." *See Semien v. PubMatic, Inc*, No. 25-CV-3164-SI, 2026 WL 216333, at *7–8 (N.D. Cal. Jan. 27, 2026) (finding sufficient allegations including detailed descriptions of how the software at issue works to collect URLs and other information in real time); *Riganian*, 791 F. Supp. 3d at 1092 (finding specific descriptions of how the technology worked sufficient to allege the communication was intercepted while in transit, as a true factual analysis of that issue was proper for summary judgment—not a motion to dismiss); *Krzyzek*, 2026 WL 206855, at *7 (same); *cf. Valenzuela*, 674 F. Supp. 3d at 758–59 (granting motion to dismiss as plaintiff only alleged that the software intercepts and stores data "in real time" and did not "explain—even at a high level—how such code might plausibly work"). Therefore, Defendant's Motion is denied in this regard.

### C. CIPA Section 632 is Inapplicable

Defendant next argues that CIPA § 632 is inapplicable to the alleged conduct because Plaintiff fails to allege that the intercepted communications were confidential as required under § 632.[7]  Mot. at 28–29.  Plaintiff argues that she had "an objectively reasonable expectation of confidentiality" that her "unique shopping habits" and other data would not be in the hands of third parties and used to "create a unique advertising profile and a basis for a slew of personally targeted ads."  Opp'n at 27–28.

"To state a claim under § 632, Plaintiff must show there was (1) an electronic recording of (2) a confidential communication and (3) all parties did not consent."  *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024) (citation omitted).  Under Section 632, a communication is confidential if "a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded."  *Flanagan*, 27 Cal. 4th at 777.  "Courts generally find that Internet communications do not have an objectively reasonable expectation of confidentiality, especially if those communications can be easily shared by the recipients of the communications."  *Yoon v. Meta Platforms, Inc.*, No. 24-CV-2612-NC, 2024 WL 5264041, at *6 (N.D. Cal. Dec. 30, 2024) (citations omitted).  "Plaintiffs must plead 'something unique about these particular internet communications' to justify that they are confidential."  *Id.* (citing *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (2022)).  "[W]hile there is no reasonable expectation of privacy over URLs that only reveal basic identification information," there is "over URLs that disclose 'the particular document within a website

---

[7] Defendant also argues that "[a] party to the communication is exempt from CIPA liability because 'parties to a communication cannot eavesdrop on their own conversation.'"  Mot. at 28 (quoting *Williams v. What If Holdings, LLC*, No. C 22-3780 WHA, 2022 WL 17869285, at *2 (N.D. Cal. Dec. 22, 2022)).  The Court agrees with Plaintiff that this argument is irrelevant because Plaintiff is alleging that "Defendant *aided and enabled* third parties to capture her communications."  Opp'n at 27; *see also D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1201 (S.D. Cal. 2024) (rejecting same argument because "the Complaint alleges that Defendant allows a third party to eavesdrop on its communications in real time, thereby 'simultaneously disseminating' the chat communications 'to an unannounced second auditor'" (cleaned up) (citation omitted)).

that a person views.'" *Id.* at *7 (quoting *Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023)).  Determining whether Plaintiff has a reasonable expectation of privacy "is a 'fact-intensive inquiry' that is often too difficult to resolve at the pleadings stage." *YETI Coolers*, 754 F. Supp. 3d at 943 (quoting *Brown*, 685 F. Supp. 3d at 937).

Plaintiff alleges that Defendant allows third-parties to collect information such as "[d]etailed browsing histories and product preferences," "[s]hopping cart contents and purchase behavior," "[p]ersonally identifiable information including names, email addresses, and Facebook/Google account identifiers," "[r]eal-time behavioral data showing consumer interests and purchasing patterns," and "[d]emographic and psychographic profiles that enable targeted marketing." *Id.* ¶ 165.

At the pleading stage, the Court finds that Plaintiff has sufficiently alleged a reasonable expectation that the immense amount of personally identifiable and browsing data allegedly collected by the Tracking Technologies would not be shared with third parties.  *See, e.g.*, *YETI Coolers*, 754 F. Supp. 3d at 943 (denying motion to dismiss where plaintiff alleged that she reasonably expected that defendant would keep her personally identifiable and credit card information private and not disclose it to third parties); *Yoon*, 2024 WL 5264041, at *7 (finding plausible allegations of confidentiality where defendant used software to collect video viewing data without plaintiff's consent); *L.B.*, 2025 WL 2899514, at *18 (declining to decide what a reasonable expectation is at the pleading stage and denying the motion to dismiss); *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1054 (N.D. Cal. 2025) (finding sufficient allegations for § 632 based on similar facts); *Smith v. Red Rock Shoes, Inc.*, 24-CV-6709-REL, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025) (finding a reasonable expectation of privacy where the privacy policy said nothing about third parties collecting, storing, and analyzing a visitor's browsing and purchase history).  Therefore, Defendant's Motion is denied as to § 632.

/ / /

/ / /

/ / /

### D. No Expectation of Privacy

Defendant argues that Plaintiff fails to allege she had a reasonable expectation of privacy because she was "actively seeking out privacy violations."  Mot. at 29 (quoting *Rodriguez v. Autotrader.com, Inc.*, No. 24-CV-8735-RGK-JC, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025)).  Plaintiff argues that Defendant is again challenging standing, and Defendant's only evidence that Plaintiff is a "tester" is that she has brought other privacy-related cases.  Opp'n at 28.

The Court agrees with Plaintiff that Defendant makes another standing challenge alleging that Plaintiff is a "tester."  Defendant only relies on *Rodriguez*, which is distinguishable from the facts of this case.  2025 WL 1085787, at *1.  *Rodriguez* concerned a plaintiff who was a self-declared tester who attempted to establish standing based on analogies to First Amendment and ADA testers.  *Id.*  Here, Plaintiff does not allege that she is a tester but rather alleges that she accessed Defendant's Website to browse—and ultimately purchase—earbuds. Compl. ¶¶ 119–20.  Therefore, considering the facts alleged in the Complaint as true, Defendant has not demonstrated that Plaintiff lacks standing due to being a "tester."  *See, e.g.*, *Gabrielli*, 2025 WL 1939957, at *7 (denying this argument because the plaintiff pled "that he is *not* a tester and that he visited [defendant's] website to 'browse information about [defendant's] products' and not to seek out privacy violations"); *cf. Rodriguez*, 2025 WL 1085787, at *1 (finding no standing where there was no dispute plaintiff was a tester).

### E. CIPA Inapplicable to Extraterritorial Conduct

Defendant next argues that "Plaintiff fails to state any CIPA claim because she does not factually allege that any of the activity alleged took place in California"; therefore, her CIPA claims must fail because "[n]othing in CIPA displaces the 'strong presumption against the extraterritorial application of California law.'"  Mot. at 30–31 (quoting *Brackett v. Am. Airlines Grp. Inc.*, No. 21-CV-2681-HSG, 2022 WL 282529, at *2 (N.D. Cal. Jan. 31, 2022)).

/ / /

As discussed above, Plaintiff has sufficiently alleged that the "activity" underlying this case took place in California. *See* Compl. ¶¶ 115–19, 150. Further, "there is no doubt that the California Legislature, in enacting CIPA, intended 'to protect the right of privacy of the people of [California] from what it perceived as a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society.'" *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d at 1153 (quoting *Flanagan*, 27 Cal. 4th at 775). Plaintiff is a California resident, and the underlying collection of data took place while Plaintiff was in California. *See Zarif*, 789 F. Supp. 3d at 898 (rejecting extraterritoriality argument where plaintiff alleged she was a California resident and that the relevant communications were sent while she was in California). Therefore, Defendant's Motion fails on this ground.

### F. Unjust Enrichment

Defendant argues that, under California law, there is no separate standalone cause of action for unjust enrichment, just a restitution claim. Mot. at 31. The case law on this issue is not clean cut. *See, e.g.*, *Greenley*, 684 F. Supp. 3d at 1044 (dismissing an unjust enrichment claim with leave to amend because it is not a stand-alone cause of action); *Capital One Fin. Corp.*, 768 F. Supp. 3d at 1051 ("Both the Ninth Circuit and the California Supreme Court have allowed independent claims for unjust enrichment to proceed."); *Riganian*, 791 F. Supp. 3d at 1094 ("California cases disagree as to whether unjust enrichment is a standalone claim."). "California courts may treat unjust enrichment claims as a quasi-contract claim seeking restitution." *Saedi*, 2025 WL 1141168, at *14 (quoting *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011)). However, "[r]egardless of whether the claim is labelled unjust enrichment or restitution, a plaintiff must allege the same two elements: 'receipt of a benefit and unjust retention of the benefit at the expense of another.'" *Riganian*, 791 F. Supp. 3d at 1094 (quoting *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)).

Plaintiff argues that she sufficiently alleged restitution because she "plausibly alleges Defendant benefitted from its fraudulent concealment violations of CIPA." Opp'n

at 29–30 (quoting Compl. ¶¶ 161–77).  The Court agrees with Plaintiff.  "[T]he essence of unjust enrichment is the unjust retention of a benefit at the expense of another."  *Sons v. McManis*, No. CIV F 8-840 AWI TAG, 2010 WL 3491514, at *7 (E.D. Cal. Sept. 3, 2010) (citation omitted).  Plaintiff alleges that Defendant has monetized the data collected by the Tracking Technologies by enhancing its advertising, consumer targeting, and conversion rates.  Compl. ¶ 166.

Therefore, the Court follows others in this Circuit in finding that Plaintiff has sufficiently stated a claim for unjust enrichment.  *See Riganian*, 791 F. Supp. 3d at 1094 (finding plaintiff stated a claim for unjust enrichment where plaintiff alleged defendant violated plaintiffs' privacy rights and profited from the data collection); *Lewis v. Magnite, Inc.*, No. 25-CV-3448-MWC-SSCx, 2025 WL 3687546, at *14 (C.D. Cal. Dec. 4, 2025) (holding that plaintiff stated a claim "because Defendant surreptitiously retained and profited off Plaintiffs' data"); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 605 (N.D. Cal. 2021) ("[Plaintiff] has sufficiently pleaded a claim by alleging that [defendant] unjustly benefited from the use of his location data."); *MyFitnessPal*, 2026 WL 216334, at *9 (finding allegations sufficient where plaintiff alleged "that the resulting data collection was valuable because it enabled [defendant] to better market features and services, better target advertisements and better profit from its understanding of users' behaviors").  Accordingly, Defendant's Motion is denied insofar as it argues Plaintiff failed to state a claim for unjust enrichment.

## CONCLUSION

For the reasons above, the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's Complaint ("Mot.," ECF No. 2).  Defendant **SHALL** answer the Complaint <u>within thirty (30) days</u> of the electronic docketing of this Order.

**IT IS SO ORDERED.**

Dated:  March 12, 2026

*Janis L. Sammartino*

Hon. Janis L. Sammartino
United States District Judge

25-CV-1759 JLS (BLM)